**James CRISP, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.**

No. 84–3982.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 7, 1986.

Decided March 3, 1986.

Rehearing Denied and Opinion Ordered Published May 2, 1986.

John A. Cervay (argued) E.S. Gallon & Assoc., Dayton, Ohio, for plaintiff-appellant.

Joseph E. Kane, Asst. U.S. Atty., Columbus, Ohio, Nicholas J. Pantel (argued), Asst. U.S. Atty., Cincinnati, Ohio, for defendant-appellee.

Before KEITH and GUY, Circuit Judges, and TAYLOR, District Judge.*

## OPINION

PER CURIAM.

On July 9, 1981, Crisp filed for social security disability benefits claiming disability from December 15, 1977, as a result of a back problem. The claim was denied at all levels with the administrative law judge's (ALJ) denial coming on July 26, 1982. Crisp sought district court review under 42 U.S.C. § 405(g). On April 26, 1984, a U.S. Magistrate recommended affirmance of the ALJ and, on October 29, 1984, after a *de novo* review, the district court adopted the report and recommendation of the magistrate and denied benefits.

Plaintiff was born on May 19, 1945. He completed the sixth grade in school. His relevant vocational experience includes work as a roofer, upholstery trainee, laborer, welder, and truck driver. These are for the most part heavy, unskilled labor jobs.

In December of 1975, Crisp injured his back in a fall at work. He attempted to return to work but his back bothered him too much. He has continued treatment with doctors for his back problems and the related pain ever since, and does not work. He is now divorced and has four children living with his ex-wife.

Although much of the evidence presented throughout the various proceedings in this case involved plaintiff's back problems and the pain generated therefrom, it is unnecessary to review this evidence since the ALJ found him unable to perform his past relevant work as a roofer. The ALJ also found him to have a back impairment which causes both exertional and non-exertional limitations, and a psychological impairment which causes non-exertional limitations only. Considering his exertional limitations only, the "grid" would direct a finding of not disabled. The ALJ concluded that Crisp had the residual functional capacity to perform sedentary work, as defined in Regulation 404.1567, and that "[t]he level of work the claimant can do in light of the exertional limitations is not significantly affected by the non-exertional limitations." (App. 18)[1]

On appeal, Crisp does not challenge the ALJ's findings as to exertional limitations, nor as to non-exertional limitations except as to his psychological impairment. It is Crisp's claim that the psychological impairment is disabling, stopping him from doing any work, and that there was not substantial evidence to support the ALJ's findings to the contrary.

Plaintiff's initial application for disability was filed on July 9, 1981. The only disability claimed was "back disorder" which was specifically related to a December 8, 1975 job injury. The original denial of his claim on August 19, 1981, stated that "[t]he medical evidence shows you have pain in your back but good muscle strength and

---

* Honorable Anna Diggs Taylor, United States District Court, Eastern District of Michigan, sitting by designation.

1. The ALJ credited the claimant's allegation of pain but found that it would not restrict him from performing the full range of sedentary work.

feeling. Your condition does not prevent you from working."

On August 26, 1981, Crisp filed a Reconsideration Disability Report in which he indicated no change in his condition since the filing of his original claim. He also indicated on this form, however, in response to the question "Do you have any additional illness or injury that isn't recorded in the file?", that he had "developed a nervous condition." He also stated as his reason for requesting reconsideration that "I am not able to work because of my medical condition. I cannot bend, stoop, nor lift. I suffer from pain in back and legs all the time." There was no elaboration on any disabling aspect of the alleged "nervous condition," nor was there any indication of having sought or received any medical treatment for this condition. The reconsideration determination which again denied benefits did not reference claimant's nervous condition.

Claimant's request for a hearing was filed on November 16, 1981, and indicated he was now represented by an attorney. In answer to the question "Has there been any change in your condition [since your request for reconsideration was filed]?", Crisp responded: "I cannot remember anything—problem getting along with family—I suffer a lot of headaches." Crisp (or his attorney) also checked the blank on the form which indicated he had *no* additional evidence to submit. Medical reports through August 17, 1981, dealing *exclusively* with plaintiff's back problem were submitted.

■ Claimant's hearing date before an ALJ was set for July 15, 1982. Prior to that date, his attorney sent him to Jerry F. Flexman, Ph.D., a psychologist, for an evaluation. Flexman's report was the only outside evidence of a psychological impairment other than Crisp's own testimony at the hearing.[2] Although Flexman concluded that Crisp was not "capable of engaging in any substantial work activity," the ALJ

correctly concluded that this was a legal conclusion which was not binding on him. 20 C.F.R. § 404.1526; *LeMaster v. Weinberger*, 533 F.2d 337 n. 4 (6th Cir.1976). The ALJ also concluded that Flexman's findings limited "the claimant unnecessarily based on the empirical findings." (App. 17.) The "empirical findings" of Flexman which the ALJ referenced included an adequate memory for recent and remote events; fair judgment for ordinary daily affairs; no looseness or tangentialities in claimant's thought processes; no delusions or hallucinations; a Wechler Memory Scale reading within normal limits; good mental control; adequate current information and orientation; an attention span within the dull normal range; good ability to learn new information; and, in general, a functioning within the normal range of intelligence notwithstanding low academic achievement and emotional difficulties.

Although the ALJ did not reference them, there are two other aspects of Flexman's report which bear comment. The report indicates that in 1962 Crisp was involved in an automobile accident which left him unconscious for two to four days. This was followed by a nervous breakdown and panic attack. Crisp told Flexman that he still has headaches which were a sequela of the accident in 1962. Crisp thus had 15 years of steady work after the onset of a nervous condition and while experiencing headaches.

The other significant aspect of Flexman's report is that, although he alludes to Crisp currently having "significant family difficulties between he and his wife," he fails to elaborate further on this as a cause or effect of claimant's problems. Thus, the ALJ was left without any evaluation as to the durational aspects of claimant's current emotional problems and the degree to which they relate to recent transitory emotional trauma he was experiencing. This is to be contrasted with Crisp's own testimo-

---

2. Dr. Vickers, an M.D., specializing in internal medicine, did submit an "evaluation of residual capacity" form dated May 7, 1982, relative to claimant's physical condition in which, under "Remarks," he stated, "I agree with the findings ... [of] Dr. Flexman." (App. 115.)

ny at the hearing relative to his marital problems.[3]

The ALJ also had the advantage, which no reviewing court does, of seeing the claimant in person. A reading of the hearing transcript reveals Crisp to be articulate, albeit not a grammarian, and responsive to the questions asked. It also reveals that he is leading a relatively normal life considering he is unemployed, short on money, going through a divorce, poorly educated, and suffering from some genuine physical problems and pain. For example, he goes fishing (App. 40); plays the guitar; and has friends come over and play guitar with him (App. 40–41); takes care of all his personal needs; can drive a car, albeit on a limited basis (App. 42); has a steady girlfriend (App. 32–35) with whom he gets along very well (App. 117); has no difficulty with sexual performance (App. 117); took an extended auto trip to Tennessee to visit his father and brother (App. 41); lives with friends (App. 39); goes grocery shopping (App. 41); and listens to the radio and watches television (App. 40).[4]

Since we find, as did the district court, that there is substantial evidence to support the ALJ's decision, we affirm.

---

3. Q. Now, let's talk again about your nerves. First of all, what happened to your marriage? What happened there?
A. Well, it's just religion, I guess.
Q. What do you mean?
A. She started going to church and well I did too. We started goin' together to church and all of a sudden she started hollering at me and tell me I was demon possessed and I had seven personalities and I was a devil out of the pit of hell, and just stuff like this every day for five years. I listened to that. (App. 47).

4. This recitation of claimant's activities leaves out other portions of the hearing records detail-

ing claimant's complaints, just as the analysis of Dr. Flexman's report left out much of his negative comment. However, it must be remembered that the standard on review is to determine if substantial evidence supports the ALJ's conclusion. By definition, this allows for a case in appropriate circumstances to be decided either way on the same record. The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant.