842 F.2d 333
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James PULLEY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1419.
 United States Court of Appeals, Sixth Circuit.
 March 16, 1988.
 
 Before KEITH, WELLFORD and DAVID A. NELSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Claimant James Pulley appeals the decision of the district court denying him disability insurance benefits. For the reasons set forth below, we AFFIRM the decision of Judge Suhrheinrich of the Eastern District of Michigan.
 
 I.
 
 2
 Claimant filed his third application for benefits in September 1982, alleging a disability onset date of January 12, 1981. He claims to suffer from sarcoidosis, arthralgias, carpal tunnel syndrome, and hypertension. These applications were denied initially and upon reconsideration. After a de novo hearing, an Administrative Law Judge ("ALJ") also denied benefits. The ALJ's decision became the final decision of the Secretary on March 19, 1984.
 
 
 3
 Pulley sought judicial review in district court. Upon recommendation of a magistrate, the case was remanded to an ALJ for vocational evidence addressing the availability of jobs for someone with Pulley's non-exertional impairments. Following a hearing, this second ALJ also recommended denying benefits. After considering Pulley's arguments and modifying the ALJ's recommendations to reflect the correct grid rule, on December 3, 1985, the Appeals Council rendered its final decision denying benefits. That decision became the final decision of the Secretary.
 
 
 4
 By order dated February 24, 1986, the matter was reinstated, and was again before the district court on cross-motions for summary judgment. The case was referred to a magistrate. On October 27, 1986, the magistrate issued a report recommending that the claimant's motion for summary judgment be denied and the Secretary's decision be affirmed because substantial evidence supported the ALJ's finding that Pulley had the residual functional capacity to perform sedentary work with limitations.
 
 
 5
 Pulley objected to the magistrate's report and recommendation. On March 31, 1987, the district court denied Pulley's motion for summary judgment and adopted the recommendation of the magistrate to affirm the Secretary's decision to deny benefits. Pulley now appeals that decision.
 
 II.
 
 6
 The issue before us is whether there is substantial evidence to support the decision to deny disability benefits to Pulley. After careful review of the record, we believe that substantial evidence exists to show that Pulley has the residual functional capacity to perform sedentary work with limitations under 20 C.F.R. Sec. 404.1567(a).
 
 
 7
 As noted by Judge Suhrheinrich below, plaintiff's condition does not approach the level of severity required by the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P., App. 1. Pulley was born on January 8, 1947, and was thirty-six years old at the time of his first hearing. He is a high school graduate, and has one year each of vocational training as a professional cook and as a mechanic. He last worked as a crane operator in an incinerator plant, but stopped working when he caught pneumonia. Pulley's complaints focus primarily on two ailments: sarcoidosis, a pulmonary/respiratory impairment which he believes causes him coughing, dizziness and shortness of breath; and carpal tunnel syndrome, which he alleges causes him pain, numbness and weakness of the wrists. At the first hearing, Pulley testified that his treating physician imposed only the following work-related restrictions on him: no walking, stooping, climbing, bending or breathing dust, fumes and pollutants. Despite his impairments, Pulley could walk one block, stand for fifteen minutes and sit for two hours at a time. He does housework, cooks, takes walks, reads, watches television, listens to the radio, sees visitors, occasionally goes to church, and plays cards.
 
 
 8
 At his second hearing, Pulley again complained of pain in his wrist that "comes and goes," but he could still drive, make beds, brush his teeth, dust, sweep, handle coins and tie his shoe laces. Dr. Michael Federman testified that Pulley had a moderate lung impairment which would not cause shortness of breath at a sitting job or upon climbing only one flight of stairs, but that he should be in an environment of good air quality. Dr. Federman also noted that Pulley's carpal tunnel syndrome was irritative but not destructive, and allowed the handling of small objects weighing up to ten pounds. It was noted that during the course of his treatment, Pulley had gained approximately sixty pounds, ultimately weighing over 280 pounds. Pulley is five feet eleven inches tall.
 
 
 9
 At the hearing, vocational expert Lawrence Zatki testified that there were 6,000 to 8,000 unskilled sit/stand jobs statewide that did not require pulling or tugging, such as jobs in inspection, sorting, packaging, information, checking, and gate tending. Pulley could perform 4,000 jobs statewide that did not require repetitive use of the hands; 2,300 of those are in Southeast Michigan. Moreover, there are 12,000 information clerk jobs in the state which were unskilled or semi-skilled and which would not require any previous work experience. These jobs exist in "significant numbers." 20 C.F.R. Sec. 404.1566; Hall v. Bowen, No. 86-3900, slip op. at 6-7 (6th Cir. Jan. 20, 1988).
 
 
 10
 With respect to Pulley's carpal tunnel syndrome, the medical data provides substantial evidence that Pulley can work despite this impairment. Electrodiagnostic testing revealed only mild carpal tunnel syndrome without associated denervation. Pulley's treating physician, Dr. Alex Kelley, Jr., found that Pulley's condition showed definite improvement with wrist splints, but that he could not engage in heavy level work, or work involving constant repetitive motions. Dr. Michael Federman, the medical advisor at Pulley's hearing, concluded that based on the record, Pulley could lift ten pounds and pick up small objects such as coins.
 
 
 11
 With respect to Pulley's sarcoidosis, Dr. Conway, a treating physician, told him in 1981 that he did not need to change jobs as a crane operator, but that he should wear a face mask in dusty environments. In March 1981, treating physician Dr. Jan Radke and Dr. Conway recommended releasing Pulley to return to his work at an incineration plant, concluding that the pollutants would not adversely affect his condition. Objective pulmonary function testing reveals that Pulley's condition has continued to improve over time; this was confirmed by treating physician Dr. Radke. Although Dr. Radke opined in May 1985 that claimant could not engage in substantial gainful activity despite the improvement, the ALJ found that Dr. Radke's conclusion was not consistent with the objective evidence of record. The medical advisor concluded that Pulley's respiratory impairment would permit him to work in a sitting job where the air quality was good.
 
 
 12
 Pulley also contends that he is disabled by the pain caused by his arthralgia and his impaired wrists. Unless the subjective complaints are supported by objective evidence, however, they cannot form the basis for a finding of disability. When weighing subjective allegations of pain, the Secretary uses a two-pronged analysis. First, he determines whether there is objective medical evidence of an underlying medical condition. If there is such a condition, he then determines whether that evidence confirms the severity of the complaints of pain, or whether the objective medical condition is of such a severity that it reasonably can be expected to produce such pain. Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986). In this case, the ALJ found that Pulley's complaints were simply not credible when juxtaposed with the objective medical evidence. A reviewing court must give great weight to the ALJ's credibility determinations. See Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 538 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983); Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir.1978).
 
 
 13
 After review of the evidence, the Secretary found that Pulley is capable of working at the sedentary level with limitations. We agree that there is subsantial evidence to support the Secretary's decision. Richardson v. Perales, 402 U.S. 389 (1971). The fact that a record may also contain evidence to support a conclusion other than that reached by the ALJ, or that a reviewing judge might have decided the case differently, is irrelevant. Crisp v. Secretary of Health & Human Services, 790 F.2d 450, 453 n. 4 (6th Cir.1986) (per curiam). As a reviewing court we cannot "weigh the evidence or substitute [our] judgment for that of the ALJ." O'Banner v. Secretary of Health, Ed. & Welfare, 587 F.2d 321, 323 (6th Cir.1978). It is our obligation only to determine whether the ALJ's findings are supported by substantial evidence. Id.
 
 III.
 
 14
 Thus, considering Pulley's residual functional capacity along with his age, education and prior work experience under the medical-vocational guidelines in 20 C.F.R. Part 404, Subpt. P, App. 2, we find that Rule 201.28 of the grid would direct a conclusion that Pulley is not disabled.
 
 
 15
 Accordingly, the decision below is AFFIRMED.