856 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ethel Irene HALL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1566.
 United States Court of Appeals, Sixth Circuit.
 Aug. 12, 1988.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judes, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Ethel Irene Hall, appeals the district court's judgment affirming the Secretary's denial of her claim for social security disability benefits. Because the Secretary's findings are supported by substantial evidence, we affirm the district court's judgment.
 
 I.
 
 2
 Ethel Irene Hall is a forty-nine year old woman with a ninth grade education. Her past work includes ten years as a machine operator and two years as a waitress. Hall first filed an application for disability insurance benefits in April 1983. Following an administrative hearing, her application was denied by an administrative law judge ("ALJ") on February 16, 1984. The ALJ's decision, affirmed by the United States District Court on November 27, 1985, conclusively determined Hall's eligibility for benefits through February 16, 1984. Hall filed a second application for disability insurance benefits on November 27, 1985. In this application, Hall alleged that she became unable to work in March 1982 because of carpal tunnel syndrome and tendonitis in her right hand extending to her right arm and neck area, and to her left arm. Her application was denied upon initial consideration and upon reconsideration. At Hall's request, an administrative hearing was held on May 20, 1986, before ALJ Alfred Morad. Hall testified at this hearing, as did Don Harrison, Ph.D., a vocational expert. Three medical reports from Dr. Jerry A. Taylor, Hall's treating physician, constituted the only medical evidence of record.
 
 
 3
 Hall, who is right handed, testified at the hearing that her primary medical problems are her right hand, arm, and shoulder, and her left hand. She alleged constant pain in her right hand that travels to the right side of her neck, as well as constant pain in her right shoulder even when sitting. Hall claimed no grip strength in her left or right hand, and stated that the heaviest item she can lift around the house is a pot of coffee. She also testified that she has taken only Motrin and an anti-inflammation medication for her condition.
 
 
 4
 Hall testified that she lives alone in a mobile home, is capable of performing light household maintenance such as dusting and vacuuming, does some cooking and can peel potatoes. She watches television, drives approximately six miles per day, and often goes to visit her daughter, with whom she grocery shops. Hall testified that she can write with her right hand, in particular that she can write checks. She alleged she can read for only ten minutes before experiencing pain. Hall also stated that because of the pain she experiences, she has trouble sleeping at night and finds it necessary to rest during the day.
 
 
 5
 Dr. Taylor's medical reports indicate that he performed out-patient surgery on Hall's wrists in June 1982, and that he treated Hall on several occasions between 1983 and 1986. In November 1985, Dr. Taylor diagnosed Hall as having carpal tunnel syndrome on the left side, possible ulnar neuropathy on the left side, acute DeQuervain's disease of the right wrist, and lateral humeral epicondylitis, bilaterally. The reports state that Hall responded poorly to medical treatment, and that she had pain in the left palm, right wrist and both elbows. Dr. Taylor reports that Hall's grip strength is reduced to 50 percent in the right hand, and 60 percent in the left. There was shown, however, no loss of fine or gross dexterity and x-rays showed no abnormalities. In addition, the medical reports state that Hall retains full range of motion of all joints, and that her nerve roots are not impaired. Medical examinations between January 1986 and April 1986 revealed multiple sites of inflammation involving both upper extremities, as well as tenderness of Hall's neck, elbow, right shoulder, right upper arm and both hands. Dr. Taylor opines that Hall is incapable of any employment that requires use of either arm, and that she will likely remain permanently unemployable.
 
 
 6
 The vocational expert, Dr. Harrison, testified on direct examination that there were between 700 and 5200 local jobs, which he classified as light work, that an individual in Hall's physical condition could capably perform. On cross-examination, however, Dr. Harrison stated that if Hall's testimony or Dr. Taylor's opinions were fully credited, Hall would not be able to perform the jobs he identified.
 
 
 7
 After considering all the evidence, ALJ Morad concluded on June 20, 1986, that Hall was not entitled to disability benefits. The ALJ concluded that Hall suffers from a severe impairment (though not a listed impairment) which prevents her from performing her past relevant work as a machine operator and waitress. The ALJ further found, however, that Hall retains the residual functional capacity to perform certain light work described by the vocational expert. This latter finding was based upon: (1) the dearth of objective medical evidence supporting Hall's testimony as to the degree of impairment; (2) Hall's admitted ability to perform a number of household and other tasks; and (3) Hall's ability to tolerate her pain with a minimum amount of medication. The ALJ's determination that Hall was not disabled became the final decision of the Secretary when the Appeals Council approved the ALJ's decision on November 18, 1986.
 
 
 8
 Hall filed a timely complaint for judicial review on December 17, 1987. After considering cross-motions for summary judgment, United States Magistrate Paul Komives recommended that the Secretary's decision denying benefits be affirmed. The Honorable Anna Diggs Taylor considered Hall's objections to the recommendation and adopted the magistrate's Report and Recommendation. She affirmed the Secretary's decision on May 22, 1987. This timely appeal followed.
 
 II.
 
 9
 The issue on appeal is whether substantial evidence supports the Secretary's decision that Hall retains the residual functional capacity to perform light work. It is well settled that when substantial evidence supports the decision of the Secretary, the decision must be upheld. Richardson v. Perales, 402 U.S. 389 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401. The fact that the record may also contain substantial evidence to support a conclusion different than that reached by the Secretary, or that the reviewing court may have decided the case differently, is irrelevant. Crisp v. Secretary of Health & Human Services, 790 F.2d 450, 453 n. 4 (6th Cir.1986) (per curiam).
 
 
 10
 The Social Security Disability Benefits Reform Act of 1984 ("the Reform Act"), 42 U.S.C. Sec. 423(d)(5)(A), sets forth the applicable standard for evaluating subjective complaints of disabling pain. This court in Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986) explained the two-step analysis as follows:
 
 
 11
 First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.
 
 
 12
 Id.
 
 
 13
 In the case at bar, the ALJ found that Hall has a severe manipulative impairment related to her hands and arms. This finding is supported by substantial evidence, and thus satisfies the first prong of the Duncan test. The ALJ further concluded, however, that the medical evidence does not support the degree of physical impairment alleged by Hall. This conclusion is in essence a determination that the second prong of the Duncan test was not satisfied--that is, (1) that the objective medical evidence does not confirm the severity of Hall's alleged pain, and (2) that the established medical condition is not so severe that it can reasonably be expected to produce disabling pain.
 
 
 14
 In our view, the conclusions of the ALJ are supported by substantial evidence in the record. The scarcity of clinical or diagnostic findings, and Dr. Taylor's explicit statement that there were no significant objective findings to confirm the severity of Hall's alleged pain, amply support the ALJ's conclusions in this regard. Substantial evidence also supports the ALJ's ruling with respect to whether Hall's alleged pain could reasonably be expected, given her established medical condition. Hall's x-rays have consistently been normal, and Dr. Taylor reports that she has full range of motion in all her joints, and that her shoulder abduction is not limited. In addition, there was no evidence of muscle spasms, nerve root involvement, or loss of fine or gross dexterity. Finally, Hall testified that she took minimal pain medication. Given these facts, we find that the ALJ's determination that the second prong of the Duncan standard was not satisfied is supported by substantial evidence in the record.
 
 
 15
 For the above stated reasons, we conclude that the Secretary's decision is supported by substantial evidence, and hereby AFFIRM the judgment of the district court.