878 F.2d 1436
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mabel F. DRAGON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-4055.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1989.
 
 Before KENNEDY, RALPH B. GUY, Jr. and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The claimant, Mabel Dragon, filed an application for disability insurance benefits in April 1986 alleging inability to work since December 1985 due to a broken hip. The Secretary denied claimant's application both initially and upon reconsideration, reasoning that claimant's hip fracture had healed, and did not impair her from working for a full year. Subsequent to a hearing, the administrative law judge (ALJ) also denied benefits, and the Appeals Council denied claimant's request for review of the decision. Claimant then appealed to the district court.
 
 
 2
 In October 1988, the district court affirmed the final decision of the Secretary and granted summary judgment for the Secretary. Claimant now appeals to this court, alleging that there is not substantial evidence to support the Secretary's decision that claimant can perform her past relevant work. For the following reasons, we affirm the judgment of the district court that the Secretary's decision is supported by substantial evidence.
 
 I.
 
 3
 Claimant was born in January 1927, and completed a sixth grade education. Her past relevant employment is as an assembly worker at Chrysler Transmission Plant, where claimant worked from 1968 until she stopped working on December 17, 1985, because of a broken hip. Claimant alleges that she is permanently disabled and unable to work due to residual problems from her broken hip. Subsequent to filing her application for benefits, claimant added the impairments of back and foot pain, arthritis in her hands, a bladder problem, a hearing problem, and psychological problems. The evidence in this case consists of testimony by claimant at the hearing before the ALJ and medical reports from several physicians who either treated or evaluated claimant's alleged impairments.
 
 
 4
 Claimant testified that she lives alone and that her usual daily activities consist of watching television, attending to her personal care needs, light housekeeping, and visiting with neighbors. In addition, she occasionally goes to a local mall where she walks for exercise, and she visits a health spa on an almost daily basis. Claimant testified that at the health spa she uses the whirlpool, the steam room, and the sauna, swims for about fifteen minutes in the pool, and does aerobic exercises in the pool. Claimant stated that she has pain and difficulty with walking and sitting due to residuals from the hip fracture in December 1985. She also has trouble with swelling in her hands in the morning, and needs to run hot water over them to enable her to move her fingers.
 
 
 5
 Hospital records indicate that claimant fell down the stairs at home on December 17, 1985, and was admitted to Toledo Hospital on that date with a diagnosis of an unstable four-part left intratrochanteric fracture. She had surgery consisting of an open reduction and internal fixation of the fracture and was discharged to home approximately two weeks later. (App. 112). Reports covering follow-up care by the surgeon, Dr. Hartwig, indicate that by January 30, 1986, there was some early bone formation, and by March 10, 1986, the fracture was healing well. On September 3, 1986, Dr. Hartwig noted that claimant was doing "very well" and had been ambulating with no problems. Dr. Hartwig expected claimant to return to work about the time of her one-year checkup. His report, dated August 13, 1987, states that claimant has a residual shortened left leg and also a subsequent compression fracture in her back from a separate accident. Dr. Hartwig indicated that claimant is not capable of lifting fifty pounds at a time or of carrying up to twenty-five pounds frequently. He concludes that claimant cannot do heavy or medium work.
 
 
 6
 The ALJ noted in his report that claimant gave a vague history of back pain and that an x-ray report from November 18, 1986, indicated generalized osteoarthritis of the dorsal and lumbar spines. Claimant was seen by Dr. Gordon, a rheumatologist, on two occasions in early 1987. Dr. Gordon saw claimant at the request of one of claimant's treating physicians, for evaluation of her leg and back pain. Dr. Gordon's report indicates diagnoses of osteoarthritis involving the lumbar spine with degenerative disc disease, peripheral neuropathy, and a significant underlying personality disorder. Dr. Gordon opined that claimant was incapable of returning to her former job since this would require standing all day on "her very sore and painful feet." The report concludes that since claimant is incapable of lifting fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds, she is incapable of gainful remunerative employment. (App. 193).
 
 
 7
 There are several reports in the record which reference claimant's alleged foot pain. Hospital records indicate that she underwent surgery in 1984 for removal of heel spurs and an ingrown toenail. Claimant was treated by a podiatrist who noted that claimant tolerated the surgery quite well and subsequently returned to work. This podiatrist last saw claimant in November 1984, when he fitted her with orthotics for her shoes. After claimant's hip surgery, she again complained of foot pain and was referred by her surgeon, Dr. Hartwig, to another podiatrist, Dr. Sheridan. This podiatrist questioned a possible peripheral neuropathy, and referred claimant to a neurologist, Dr. Ayala. Although Dr. Ayala found some evidence of a possible modest diffuse neuropathy, he felt that claimant's pain was too localized to result from this and recommended that Dr. Sheridan look to claimant's feet for the source of her symptoms. Claimant then returned to Dr. Sheridan who casted her for new orthotics in January 1987. Dr. Sheridan's report from a two week follow-up visit indicates that claimant no longer had any heel or plantar fascitis pain. Claimant did have some arch pain, and was told to inform Dr. Sheridan if it persisted. There is no further evidence of any continued visits.
 
 
 8
 Claimant also alleges that arthritis in her hands contributes to her inability to work. The ALJ noted in his opinion that none of claimant's treating physicians indicated any diagnosis of, or treatment for, arthritis in claimant's hands. Claimant was consultively examined by Dr. Stepniewski, an internist, in July 1986. Dr. Stepniewski noted claimant's symptoms related to her hands, and noted some swelling of the joints of her fingers with some decrease in motion and tenderness, but no redness or warmness. He also reported normal grasp, manipulation, pinch, and fine coordination in both hands. (App. 149).
 
 
 9
 Claimant similarly complained of a hearing loss, also not documented by any of her treating physicians. When she was consultively examined by Dr. Stepniewski in July 1986, claimant did not report any hearing problems, and none were noted. Claimant did have a single episode of otitis externa of the right ear in September 1986, but this completely resolved with antibiotic treatment. There is also a medical report indicating that claimant had a minor bladder problem in June 1986. Claimant was treated by Dr. Grossman, who prescribed the antibotic Bactrim, and claimant has not had any further bladder problems since that time. Based on the above reports, the ALJ concluded that claimant's alleged impairments relating to her feet, hands, bladder problems, and hearing were not medically demonstrated as severe conditions having any occupational significance.
 
 
 10
 Lastly, claimant alleges impairments due to psychological or emotional problems. She was evaluated for these complaints by Dr. Zupnick in April 1987 on referral from her attorney. (App. 188-92). Dr. Zupnick, a clinical psychologist, noted that claimant was oriented, her memory adequate, and she appeared to have an intellectual level within the average range. He did note some depression, but no unusual fears or phobias. Dr. Zupnick concluded that claimant suffered from two mental problems. The first is labeled a "Histrionic Personality Disorder," characterized by overreacting in a somewhat dramatic way to minor events. The other problem is a "Superimposed Cyclothymic Disorder." Dr. Zupnick stated that claimant quickly vacillated between feeling depressed and being energetic. Dr. Zupnick opined that claimant met the listing of impairments under section 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1, for affective disorders, and was disabled from any type of remunerative employment. The ALJ found this report unpersuasive for several reasons. The ALJ first noted that claimant did not report mental problems in her application for benefits, nor did she mention her alleged mental impairment when she testified at the hearing. Also, there was no evidence that this impairment had impeded her ability to work. The ALJ also noted that none of claimant's treating physicians mentioned mental impairments. Although Dr. Gordon did diagnose a personality disorder, the ALJ noted that claimant had consulted Dr. Gordon for back and leg pain, and that Dr. Gordon was probably aware of Dr. Zupnick's evaluation at the time he wrote his report. Finally, the ALJ noted that Dr. Zupnick had not commented on claimant's ability to function in her everyday life with these alleged mental problems. See Id. at Sec. 12.04B. The ALJ concluded that, based on the evidence in this case, claimant functions very well in her everyday life and, therefore, her mental impairments are not "severe" in that they do not prevent her from meeting the mental demands of basic work activity of the same kind as she performed at Chrysler.
 
 
 11
 The ALJ next examined the requirements of two jobs that claimant had recently performed for Chrysler. One job was as a fin and ring setter, the other doing light welding. The ALJ determined that these jobs constituted light work activity, and that although claimant had severe residuals from her hip fracture, and some osteoarthritis in her spine, nothing in her medical evidence precluded her from doing light work. The ALJ therefore found that claimant could do her past relevant work, and benefits were denied.
 
 II.
 
 12
 Claimant asserts on appeal that the district court erred in upholding the Secretary's decision that claimant could return to her past work. The ALJ classified claimant's past work as light level work, and claimant asserts that this classification was incorrect. Claimant argues that her past work was medium level work, and that the medical evidence clearly establishes that she cannot do medium level work.[1]
 
 
 13
 The findings of the Secretary are conclusive if they are supported by substantial evidence and, therefore, judicial review is limited to determining whether there is substantial evidence in the record to support the findings. 42 U.S.C. Sec. 405(g); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938). The fact that the record, taken as a whole, might support a different conclusion is immaterial. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n. 4 (6th Cir.1986).
 
 
 14
 According to the Secretary's guidelines, light work entails "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. Sec. 404.1567(b). In addition, this category of work may require a good deal of walking or standing, or involve sitting most of the time with pushing and pulling of arm or leg controls. Id. Medium work, in contrast, entails "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. Sec. 404.1567(c).
 
 
 15
 As noted above, the ALJ determined that claimant could perform two of her past jobs at Chrysler, that of welder and also fin and ring setter. The fin and ring setter job involved picking up very light fins and rings out of a bin and placing them in a die in front of her. Claimant testified that she did this job mostly standing, but could do the job while seated on a stool. Claimant was then required to push the die, which weighed about fifty pounds, twelve feet to the next station. The die, however, was on rollers and claimant was not required to lift the die. The other job that claimant performed, that of welder, involved light welding using an electrode welder. Claimant testified that this job was "even easier" than that of fin and ring setter. The ALJ determined that both of these jobs require no more exertion than that described in light level work, and that the activity required by these jobs is consistent both with the medical restrictions placed on claimant by her physicians, Dr. Gordon and Dr. Hartwig, and with claimant's descriptions of her usual daily activities at the health spa.
 
 
 16
 Claimant argues that the part of her past job which involved pushing the die takes her job out of the category of light level work. However, we agree with the district court that pushing a die which is on rollers requires less exertion than lifting a fifty pound object--the latter a description of medium level work. Furthermore, the definition of light level work states that this type of work can involve pushing and pulling of arm or leg controls, and nothing in claimant's medical restrictions limited her ability to do pushing or pulling. We therefore find no error in the ALJ's decision that pushing a die on rollers is consistent with the definition of light work.
 
 
 17
 Claimant also asserts that the Dictionary of Occupational Titles (DOT), published by the Department of Labor, describes the positions of welder on a production line and assembler in the automotive industry as medium level work, and since these classifications were consistent with claimant's testimony, the ALJ should have found that claimant's past work was medium level. However, the DOT delineates general job categories, and does not dictate a mandatory category of exertion for each job listed. The ALJ can make a determination that a claimant's prior work duties do not fall within those envisioned by the listed category. Carter v. Secretary of Health & Human Services, 834 F.2d 97 (6th Cir.1987).
 
 
 18
 The burden is on the claimant to establish a prima facie case of disability by proving that she is unable to perform her past work. Mitchell v. Bowen, 827 F.2d 387, 389 (8th Cir.1987); Villa v. Heckler, 797 F.2d 794, 797 (9th Cir.1986). To determine whether claimant could do her past work, the ALJ was obligated to ascertain the demands of the former work, and compare these to claimant's present abilities. 20 C.F.R. Sec. 404.1520(e); Villa, 797 F.2d at 798; Strittmatter v. Schweiker, 729 F.2d 507, 509 (7th Cir.1984). The ALJ did determine the demands of claimant's past work by the use of testimony from claimant. The ALJ concluded that claimant's limitations would not impede her ability to do her past work and, upon review, we find that there is substantial evidence for that conclusion. Claimant also argues that the ALJ should have called a vocational expert to testify at the hearing in order to specifically categorize claimant's work. However, we do not agree that a vocational expert's testimony was required. See 20 C.F.R. Sec. 404.1566(e). All the ALJ was required to do was determine the requirements of the past work and decide if claimant could do these requirements based on the credible medical evidence.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 If we were to agree with claimant that the medical evidence renders her disabled from her past work, the next step would involve an inquiry as to whether claimant could perform other work which exists in significant numbers. See 20 C.F.R. Sec. 404.1420(f). According to the Secretary's grids at 20 C.F.R. Part 404, Subpart P, Appendix 2, claimant would be deemed disabled from light and sedentary work as a result of her age, educational status, and previous unskilled work experience. See Id. at Rule 201.01 and 202.01