940 F.2d 660
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thelma LINTON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-1715.
 United States Court of Appeals, Sixth Circuit.
 Aug. 6, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Thelma Linton appeals the summary judgment awarded to the Secretary of Health and Human Services ("Secretary") which affirmed the Secretary's denial of her claim for disability insurance benefits. The issue in this case is whether there is substantial evidence to support the ALJ's finding that plaintiff was not so physically disabled by multiple sclerosis that she would have been unable to work as a security monitor, a telephone solicitor, a ticket seller, a cashier, or an order filler in the time period before January 1, 1988, the date on which her insured status ended. For the reasons that follow, we affirm.
 
 I.
 
 2
 Plaintiff was employed as a licensed practical nurse until May 21, 1982, when she left her employment. She has not worked since. On March 10, 1983, plaintiff first reported to Dr. Kaul, her treating neurologist, that she had problems with numbness and tingling in her arms and below her sternum. Approximately a year later, on March 2, 1984, plaintiff again consulted Dr. Kaul, who reported that plaintiff's condition had improved in the last year. He found that she was "fairly stable compared to last year," and that she had not "complained of double vision or dizzy spells or numbness, etc." After testing in April 1984, plaintiff was diagnosed as suffering from multiple sclerosis, but she did not see Dr. Kaul again until November 2, 1984, when she reported back pain and pain in her arms. Dr. Kaul prescribed ibuprofen and did not see plaintiff again until July 14, 1987, over two and one-half years later, when she complained only of a backache and poor balance. Plaintiff's insured status expired on December 31, 1987.
 
 
 3
 After filing her claim for disability insurance benefits on March 28, 1988, plaintiff saw Dr. Kaul again on August 18, 1988. Dr. Kaul reported findings of gait abnormality with mild ataxia and, for the first time, hypesthesia of both hands.
 
 
 4
 On September 9, 1988, for the apparent purposes of this litigation, Dr. Kaul wrote a letter in which he stated that his last examination of plaintiff found her presenting symptoms of gait abnormality, ataxia, and hypesthesia of both hands. It was his opinion that plaintiff suffered from progressive multiple sclerosis, and that, because of ataxia and the numbness in her hands, plaintiff could not return to her vocation as a nurse.
 
 
 5
 On August 24, 1988, after her application for disability insurance benefits had been denied, plaintiff filed a request for a hearing. The hearing was held on February 14, 1989, before an Administrative Law Judge ("ALJ"), who determined that plaintiff was not entitled to benefits because she could still perform sedentary work of a limited kind which was available in the national and regional economies. Plaintiff then filed an application for review with the Appeals Council and submitted additional evidence in the form of the deposition of Dr. Kaul. On July 7, 1989, the Appeals Council upheld the decision of the ALJ, and plaintiff filed this action in the United States District Court.
 
 
 6
 In a Report and Recommendation dated January 31, 1990, the United States Magistrate found the ALJ's decision supported by substantial evidence, and on May 8, 1990, the district court adopted the magistrate's Report and Recommendation upon which it entered summary judgment in favor of the Secretary. This timely appeal followed.
 
 
 7
 The parties agree that plaintiff was last insured on December 31, 1987, and, therefore, she had to establish the existence of a disabling impairment on or before that date.
 
 II.
 
 8
 When reviewing the denial of Social Security benefits, this court inquires "whether the Secretary's findings are supported by substantial evidence and whether the Secretary correctly applied the law." Mullis v. Bowen, 861 F.2d 991, 992-93 (6th Cir.1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). The reviewing court must examine the record as a whole, Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 852 (6th Cir.1986), and the fact that the record may also contain substantial evidence to support a conclusion different from that reached by the Secretary is irrelevant. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n. 4 (6th Cir.1986) (per curiam).
 
 
 9
 The ALJ concluded that plaintiff had a severe impairment in the form of multiple sclerosis that did not meet or equal in severity any listing impairment in Appendix I to Subpart P of Regulation No. 4 of the Social Security Act and that this severe impairment precluded her from performing her past relevant work as a licensed practical nurse. The ALJ concluded, however, that plaintiff retained the residual functional capacity to perform work of a sedentary nature which was available in the national and regional economies, and he therefore found her to be not disabled.
 
 
 10
 In deciding whether the plaintiff's residual functional capacity would allow her to perform certain jobs in the national and regional economy, the ALJ posed two hypothetical questions to the vocational expert who attended the hearing. First, he asked the vocational expert to assume that plaintiff could do a restricted range of unskilled sedentary work that was non-hazardous and would provide plaintiff with the option to sit or stand. He ruled out any production line work and any work requiring the continuous use of plaintiff's upper extremities. Intermittent writing might, however, be required. The vocational expert testified that jobs meeting those criteria were present in the regional economy and included the occupations of security monitor, telephone solicitor, ticket seller, cashier, and order filler.
 
 
 11
 For his second hypothetical, the ALJ asked the vocational expert to assume that plaintiff's testimony was fully credible and to give an opinion about whether there would have been any work that plaintiff could have performed prior to January 1988. The vocational expert testified that, if plaintiff's testimony were fully credited, plaintiff would have difficulty maintaining full-time employment because she had to lie down for an hour and one-half a day due to exhaustion, because of diminished dexterity in her hands and fingers, and because of her alleged difficulty in concentrating her thoughts.
 
 
 12
 The ALJ found the facts of the case to be more compatible with those assumed in the first hypothetical, and he therefore determined that plaintiff was capable of performing the sedentary jobs mentioned by the vocational expert. The ALJ declined to adopt the conclusions of the second hypothetical because he found plaintiff's subjective complaints, on which that hypothetical primarily depended, to be out of proportion to the objective clinical evidence and, therefore, not fully credible.
 
 
 13
 The question presented for review is not whether the ALJ correctly chose between the two hypothetical situations he proposed to his vocational expert. The question is more narrow: whether there is substantial evidence that establishes the facts recited by the ALJ in his first hypothetical. Plaintiff testified at her hearing that, although she could not do all her housework, she did prepare the family's meals, made the beds, washed the dishes, and straightened the household. She also did the family shopping. She further testified that she operated her automobile around town, that she could walk or stand continuously for twenty-five minutes, sit for thirty minutes, and write legibly for about three minutes before her writing worsened. Plaintiff's own testimony that she can perform all these activities provides substantial evidence that she could perform the unskilled, sedentary work noted by the vocational expert.
 
 
 14
 The ALJ rejected the conclusion of disability resulting from his second hypothetical question because he found plaintiff's testimony not fully credible with respect to her subjective complaints. He noted that there was no recorded complaint of fatigue in the medical records of plaintiff's treating physician. There was no report of hypesthesia in the hands until September 1988, long after plaintiff's insured status terminated on December 31, 1987, nor was there ever a mention in the treating physician's records of any patient report, or objective evidence, of impairment of the plaintiff's ability to concentrate. Indeed, Dr. Kaul stated in his deposition that impaired concentration was, at most, a secondary effect of multiple sclerosis and was not "a very common presentation."
 
 
 15
 Finally, with respect to the question of whether plaintiff was disabled before December 31, 1987, Dr. Kaul testified on deposition as follows:
 
 
 16
 Q. And speaking of plateauing, we have reports in here from 1987, 1988, and earlier. Would her condition at the end of 1987, let's say in December 1987, be approximately the same as was shown in the reports of '87, '88?
 
 
 17
 A. No. In '87 her symptoms were a little different. She was having intense back pain, radiation of pain in the right groin and the right thigh, and so her problem was totally different....
 
 
 18
 J.A. 139-40 (Emphasis added).
 
 
 19
 Because Dr. Kaul reported the plaintiff to be suffering from hypesthesia of both hands for the first time in August 1988, and because her problem in 1987 was "totally different," it was fair to conclude that plaintiff did not suffer from hypesthesia of both hands during or before 1987. Indeed, the only medical report made in 1987 contains no mention of hypesthesia, fatigue, or an impaired concentration.
 
 
 20
 In this case the ALJ concluded that plaintiff's testimony concerning her subjective symptoms was not entirely credible, primarily because the symptoms of which she complained in her testimony were not noted in the medical reports prior to 1988. As a reviewing court, we do not resolve conflicts in the evidence or decide questions of credibility, but determine only whether there is substantial evidence to support the Secretary's findings. Even though there might be substantial evidence in this case to support a conclusion different from that reached by the Secretary, there is relevant evidence that a reasonable mind could accept as adequate to support the Secretary's conclusion in this case.
 
 III.
 
 21
 For the foregoing reasons, the district court's grant of summary judgment for the Secretary is AFFIRMED.