94 F.3d 644
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SHANISE HUDSON, by Teresa MELHOUSE, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
 No. 95-2040.
 United States Court of Appeals, Sixth Circuit.
 Aug. 19, 1996.
 
 Before: LIVELY, CONTIE and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Teresa Melhouse has brought this action on behalf of her minor daughter, plaintiff-appellant, Shanise L. Hudson, to challenge a final decision of defendant-appellee, Commissioner of Social Security, denying her application for supplemental security income benefits. For the following reasons, we affirm.
 
 I.
 
 2
 Plaintiff was born on March 20, 1983, and was ten years old and in the fifth grade at the time of the ALJ's decision. She was born with congenital deformities of the left hand and both feet. She had no fingers on her left hand and no toes on both feet. An x-ray taken on June 13, 1984 revealed hypoplasia of the distal and middle phalanges of all the toes on the right foot. There was hypoplasia of the phalanges of all the toes of the left foot except the great toe, which was intact. Another x-ray revealed an intact thumb, but hypoplasia of the other fingers on the left hand.
 
 
 3
 Plaintiff has had surgery three times to correct the deformity of her hand and feet. When she was 14 months old, she underwent correction of the webbing of the fingers on her left hand. At eight months, she had surgery for the correction of the second and fourth web spaces of the left hand with a skin graft. Plaintiff underwent another grafting surgery on her feet and left hand on August 15, 1985.
 
 
 4
 Plaintiff applied for supplemental security income benefits on June 17, 1992, claiming disability due to missing fingers on her left hand and missing toes on both feet. Her application was denied initially and upon reconsideration. On December 7, 1993, a hearing was conducted by an Administrative Law Judge ("ALJ"), at which plaintiff and her mother testified accompanied by an attorney.
 
 
 5
 At the hearing before the ALJ, plaintiff's mother stated that her daughter has trouble performing routine household chores when fingers are required, such as making a bed. On a typical school day, plaintiff is washed and dressed by her mother. After school, she is picked up by her mother and returns home. She eats dinner, watches TV, takes a bath and goes to bed.
 
 
 6
 Also introduced into evidence before the ALJ were reports of her teachers and various physicians or psychologists. They indicated the following. In 1990, plaintiff's second grade teacher described her as well-mannered and well-behaved. The teacher also stated that plaintiff had an even temperament even in adverse situations, but did note that plaintiff was very sensitive about the deformity of her hand and tried to conceal the hand as much as possible. Plaintiff's third grade teacher stated that plaintiff was functioning well with her handicap, that her daily assignments were not affected, and he observed no socialization problems.
 
 
 7
 Plaintiff's fourth grade teacher described her as an ideal pupil who demonstrated the ability to function normally in a regular classroom with no concentration or attention problems. However, a month later, after plaintiff transferred to a different school, plaintiff's new teacher, Ms. Blakely, stated that she had trouble concentrating and became hysterical when questioned or teased about her deformed hand. The teacher recommended counseling and believed that plaintiff's moodiness stemmed from embarrassment about her hand. Plaintiff's fifth grade teacher indicated she was functioning at grade level, had no behavioral problems, and got along well with her peers. He believed she could benefit from counseling to boost her self-esteem.
 
 
 8
 In 1991, Dr. Martin Kleinman examined plaintiff and concluded that she had the ability to function independently, appropriately, and in an age-appropriate manner. Dr. Kleinman also stated that plaintiff's impairment was not comparable in severity to any impairment that would disable an adult. In a subsequent Individualized Functional Assessment ("IFA") case summary, a medical examiner concluded that plaintiff was able to function independently and in an age-appropriate manner. The doctor stated that plaintiff was moderately limited in motor development and social development, and that she was less than moderately limited in cognitive development, personal/behavioral development, and concentration.
 
 
 9
 Plaintiff underwent a psychiatric examination by Dr. Coleman in 1991 when she was in the third grade. She was characterized as well-liked in her normal social functioning, although she became aggressive at unpredictable times. The psychiatrist described plaintiff's stream of mental activity as blocked, slowed and vague, and noted that plaintiff was obsessed by her shortcomings and felt that if people could see her hand, they would think her inadequate. Dr. Coleman also felt that plaintiff's problems may have been manifestations of deep anxiety and perhaps did not reflect an educational problem. Dr. Coleman assigned plaintiff a GAF score of 55.
 
 
 10
 In 1992, plaintiff was examined by pediatrician, Dr. P.K. Dave. The doctor stated that plaintiff writes very well with her right hand and can dress herself, but has difficulty buttoning her clothes or tying her shoelaces. The doctor felt that she needed training for tasks involving coordination of both hands. The doctor found that plaintiff had no trouble with ambulation and was able to perform age-related activities, as well as taking care of her personal hygiene.
 
 
 11
 Dr. S. Rastogi, a psychiatrist, conducted a psychiatric examination of plaintiff in January 1993. The doctor found plaintiff to be depressed and diagnosed her with a dysthymic mood disorder. He assigned her a GAF score of 40 to 50.
 
 
 12
 After the hearing, the ALJ found that plaintiff did not have an impairment comparable to that which would disable an adult. He concluded that plaintiff had no impairment in concentration or communicative functioning. He did state, however, that plaintiff had a less than moderate functioning impairment in the cognitive and personal/behavior domains. He found that plaintiff had a moderate social function impairment because of her persistent, emotional reaction to her peers' teasing. He also found that plaintiff had a moderate motor functioning impairment because of the deformity of her left hand. He rejected the low GAF ratings given by the two consulting psychiatrists because they had each seen plaintiff only once. He decided to rely more heavily on the evaluation given by plaintiff's teachers because they had seen her on a daily basis. The ALJ found that after adjusting to her new school, plaintiff was making considerable improvement in her behavior and attitude towards school. The ALJ concluded that plaintiff was moderately impaired in her motor and social functioning, but was not impaired to a moderate or greater degree in any other domain or behavior area. He, thus, found plaintiff not disabled.
 
 
 13
 Plaintiff timely filed an appeal with the district court, and the court affirmed the ALJ's decision. Plaintiff timely filed this appeal.
 
 II.
 
 14
 Congress has limited our scope of review of Social Security administrative decisions to a determination of whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Sherrill v. Secretary of HHS, 757 F.2d 803, 804 (6th Cir.1985). Substantial evidence has been defined as " '[m]ore than a mere scintilla,' " it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support an opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir.1986) (citing Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir.1984)). The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. Id. Therefore, if the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir.1987); Kirk v. Secretary of HHS, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983).
 
 
 15
 Under Title XVI of the Social Security Act, the Secretary defines a child as disabled if the child has an impairment of comparable severity to that which would prevent an adult from engaging in substantial gainful employment. 42 U.S.C. § 1382c(a)(3)(A). A decision is made by evaluating in an Individualized Functional Assessment ("IFA"), the claimant's capacities with respect to five functional domains including cognitive, communicative, motor, social, and personal/behavioral functions, as well as concentration, persistence, and pace in the completion of age-appropriate tasks. 20 C.F.R. § 416.924e(c)(2). A claimant age 3-16 will be found disabled if she has a marked level of impairment in one of the domains and a moderate level of functioning in another, or if the child is functioning at a moderate level in three domains. 40 C.F.R. §§ 416.924e(c)(2)(i) and (ii).
 
 III.
 
 16
 In the present case, plaintiff first challenges the factual underpinnings of the ALJ's finding that she has no impairment of concentration or communicative functioning. Plaintiff argues that at her hearing, she cried due to her emotional state and did not understand the ALJ's questions.
 
 
 17
 We find there is substantial evidence to support the ALJ's conclusions. The ALJ relied on evidence in the record indicating plaintiff could communicate effectively and productively, and participated in class. The ALJ also noted that plaintiff at the hearing demonstrated that she communicates well. Plaintiff contends the ALJ asked primarily leading questions to which plaintiff responded "uh-huh" or made similar abbreviated responses, which were hardly indicative of an eleven-year-old with excellent communication skills. Although there is some dispute as to how well plaintiff communicated at her hearing, her teacher at the time, Mr. Woods, indicated that she had improved in her communication skills and participated in group discussions. Although plaintiff argued that she did not understand and appropriately respond to the ALJ's questions, this is not clear from reading the transcript. This issue involves disputes over plaintiff's demeanor in listening and responding to the questions. On such a matter, this court must defer to the determination of the fact-finder, who was present at the hearing, and has the responsibility for initially making such determinations. See Sizemore v. Secretary of HHS, 865 F.2d 709, 713 (6th Cir.1988).
 
 
 18
 In regard to concentration, plaintiff argues that her poor grades are due to her limited ability to concentrate. The ALJ acknowledged that one teacher stated plaintiff did, on occasion, need to be refocused on the task at hand. He also noted, however, that plaintiff had a grade point average of 1.778 to 2.5 on a 4.0 scale, and one of plaintiff's recent teachers noted that she was showing improvement in functioning at her grade level. With the exception of Ms. Blakely's report, all of plaintiff's teachers gave favorable reports of plaintiff's concentration. Thus, there is substantial evidence to support the ALJ's determination.
 
 
 19
 Plaintiff also argued that her social functioning is worse than "moderately impaired," as the ALJ found. We disagree. In regard to social functioning, the ALJ acknowledged plaintiff's crying, depression, and other emotional reactions to being teased about her impairment, but concluded that the majority of the evidence showed that plaintiff did get along with her mother, siblings, teachers, and peers, relying on the reports of her teachers and plaintiff's testimony. He noted further that plaintiff had not received extensive counseling. Although plaintiff had signs of social isolation after moving to a new school, the ALJ found this situation improved after a period of time. Substantial evidence supports this conclusion.
 
 
 20
 The ALJ found that plaintiff had less than moderate functioning impairment in the cognitive and personal/behavioral domains on the IFA. Plaintiff argues that her condition was worse than a "less than moderate" functioning impairment in cognitive capacity, pointing out that two teachers indicated that she was performing below grade level and that a recent report card revealed academic problems. Plaintiff argues that there is not an adequate basis for the ALJ to reject the findings of two government consulting examiners, who gave plaintiff very low GAF scores. In discounting Dr. Coleman's GAF rating, the ALJ stated that plaintiff was receiving adequate grades in school at the time. He found that Dr. Rastogi, who gave plaintiff an even lower GAF, saw plaintiff when she had transferred schools and was doing poorly, and even received some failing grades. The ALJ noted that conditions had improved since adjusting to her new school.
 
 
 21
 This conclusion of the ALJ is supported by substantial evidence. With regard to Dr. Rastogi's opinion, the ALJ properly noted that Dr. Rastogi had examined plaintiff during the period of her difficult adjustment to a new school. Contrary to plaintiff's assertions, the ALJ did not have to put forth his own medical opinion to consider Dr. Rastogi's opinion in the context of the other events occurring in plaintiff's life. See Crisp v. Secretary of HHS, 790 F.2d 450, 452-53 (6th Cir.1986). Although it is clear from the record that plaintiff had difficulty adjusting to her new school in October 1992, the reports from plaintiff's teachers reasonably suggest that in the years before the move and within one year after the move after plaintiff had time to adjust, plaintiff did fairly well at school. At all times, her grade point average was within a "C" range, which reasonably suggests average academic performance compared to her peers. With the exception of Ms. Blakely, plaintiff's fourth grade teacher after her school transfer, the majority of plaintiff's teachers gave favorable reports of plaintiff's school performance. For example, Mr. Woods' evaluation of plaintiff in November 1993 stated that plaintiff was very responsible about her work, tried very hard, made efforts to participate in group discussions, and had a good attitude about working independently. He also noted that plaintiff adapted to change well and was functioning at her grade level with no special education. He noted that although plaintiff was inclined to be timid and shy, she had shown growth in her communication skills and displayed more confidence in her ability. He found her to be a model student, cooperative, and able to get along with her peers.
 
 
 22
 The ALJ reasonably chose to give more weight to the reports of plaintiff's teachers, who were able to observe her for long periods over the course of several months, rather than to the reports of one-time examiners. See 20 C.F.R. §§ 416.927(b) and (d)(2)(4); Crisp v. Secretary of HHS, 790 F.2d at 452-53. We believe the ALJ reasonably relied upon evidence of plaintiff's performance in school. Thus, there is substantial evidence to support the district court's conclusion that plaintiff's cognitive impairment was of less than moderate severity.
 
 
 23
 The ALJ found that plaintiff had a less-than-moderate impairment in the personal/behavior function domain. Plaintiff argues that she had at least a moderate limitation in this domain. Plaintiff's argument is unpersuasive, and substantial evidence supports the ALJ's conclusion.
 
 
 24
 The personal/behavior function domain involves the child's ability to help herself or cooperate with others in caring for her personal needs and safety, to understand authority relationships and school rules, to develop a sense of responsibility for herself and respect for others, and to learn new skills. 20 C.F.R. § 416.924d(h)(5). The reports of plaintiff's teachers support the ALJ's conclusion that she had a less-than-moderate limitation in this domain. Her second grade teacher reported that she listened to and followed instructions, completed assignments, and had good manners and behavior. Her third grade teacher noted that she was cooperative, worked hard, followed directions, and functioned well with her handicap. Her fifth grade teacher noted that she was very responsible about her school work, had a good attitude about working independently, adapted to change well, and had no behavioral problems. Although plaintiff argues that she needed help with personal hygiene, Dr. Dave reported that she was able to perform age-related activities such as feeding and dressing herself and caring for her personal hygiene. She made her own bed with her sister's help, and there was no evidence she had significant problems with personal safety, understanding authority relationships or school rules, developing a sense of responsibility, or learning new skills. Substantial evidence, thus, supports the ALJ's conclusion that plaintiff had a less-than-moderate impairment in the personal/behavior function domain.[1]
 
 IV.
 
 25
 For the above reasons, it cannot be said that on the basis of the entire record, no reasonable person could reach the conclusions of the ALJ. Although there is some evidence to support different conclusions about the levels of plaintiff's impairments, there is substantial evidence in the record to uphold the ALJ's finding that plaintiff does not suffer from a physical or mental impairment of a comparable severity as would prevent an adult from engaging in substantial gainful activity. Therefore, the decision of the Commissioner is hereby AFFIRMED.
 
 
 
 [1]
 Plaintiff does not dispute the ALJ's finding that she had a moderate motor function impairment because of the deformity of her left hand