819 F.2d 290
 Unempl.Ins.Rep. CCH 17,577
Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William NUNN, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant- Appellee.
 No. 86-1865.
 United States Court of Appeals, Sixth Circuit.
 May 29, 1987.
 
 Before MILBURN, Circuit Judge, and WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 William Nunn appeals from the judgment of the district court affirming the Secretary's denial of social security benefits. For the reasons that follow, affirm.
 
 I.
 
 2
 Nunn filed his first application for disability insurance benefits on July 6, 1983, claiming inability to work as of September 9, 1981, due to chest pain and a back problem. This application was denied by administrative action on October 4, 1983. No appeal was taken from this denial.
 
 
 3
 Nunn filed a second application, which is the basis of this appeal, on May 22, 1984, claiming disability as of September 9, 1981, due to "back pain, pain in rt (right) leg, right side, chest pain, and hypotension (sic)." This application was denied initially and upon reconsideration. Nunn then requested and was given an administrative hearing which was held on March 15, 1985. He was represented by counsel at this hearing.
 
 
 4
 Nunn testified at the hearing as to his personal history, his work history and his ailments. Nunn was born in December, 1940, and was 44 years old at the time of his hearing. He has an eleventh grade education. He last worked as a construction laborer for approximately 20 years. This employment required him to lift weights ranging from 60 to 300 pounds.
 
 
 5
 Nunn testified that he had stopped working in August or September, 1981, after falling and injuring his right leg and back while at work. He stated that he experiences pain which starts in his back, goes into his leg, returns to his shoulders and then crosses his chest to his back. This pain occurs two or three times a day, and sometimes is constant. To control the pain he takes medication, lays down and rests. Stress or physical activity brings on his pain. He stated that he is able to sit for 45 minute periods and stand for 15 to 20 minute periods. He takes various prescribed medications for sleeplessness, pain, nerves and high blood pressure. He is able to sleep only for two or three hours before his pain wakens him. He further testified that he had not been an inpatient in a hospital since a 1982 hospitalization. Since his 1981 injury, Nunn haS attended church approximately four times and has gone to his lodge two times. He further stated that on an ordinary day he passes time by writing letters and drawing.
 
 
 6
 The following medical evidence was introduced. Dr. James McGauley examined Nunn on December 28, 1981, for complaints of back and right leg pain. Dr. McGauley reported paraspinous muscle spasm in the low thoracic and upper lumbar areas, particularly on the right, but could not evaluate the level of strength in the lower extremities. Vibratory sense was somewhat diminished in the lower right extremity. Deep tendon reflexes were 2k at the knees and Ik at the ankles. There were no pathological reflexes. Straight leg raising was positive on the right at about 45 degrees for ipsilateral low back and upper leg pain. Dr. McGauley felt that Nunn had a neurogenic problem and that Nunn was a good candidate for myelography. However, because Nunn was hesitant to undergo such treatment, Dr. McGauley began a conservative treatment of physical therapy, heat, massage, intermittent lumbar traction, ultrasound and transcutaneous nerve stimulation.
 
 
 7
 Dr. McGauley reexamined Nunn on March 9, 1982. At this time there was bilateral lumbosacral paraspinous muscle spasm. Although it was difficult to evaluate the strength in the lower extremities, Dr. McGauley felt that there might be some weakness of dorsiflexion of the right foot. Deep tendon reflexes were the same as on Nunn's prior examination and again there were no pathological reflexes. Straight leg raising, was positive on the right at 45 degrees for ipgilateral low back and upper leg pain, and on the left at 50 degrees for low back and right buttock pain. Dr. McGauley still felt that Nunn's problem was neurogenic and that myelography was the only treatment he could offer. After noting that Nunn was reluctant to undergo this procedure, Dr. McGauley stated that under these circumstances he did not think that he could continue writing for Nunn to stay off work.
 
 
 8
 Dr. McGauley last saw Nunn on May 6, 1982. At that time the findings were similar to those reported in March, 1982. Dr. McGauley referred Nunn to Dr. John Shelton for assistance in making a decision on whether to undergo a myelogram. or to continue further conservative treatment.
 
 
 9
 On July 11, 1982, Nunn was admitted to St. Joseph Mercy Hospital complaining of at least two different types of chest pain. A consultation with a cardiologist was obtained because Nunn's description of his pain was confusing. At the suggestion of the cardiologist an exercise tolerance test was performed; however, the study was inadequate due to Nunn's back pain. Nunn was discharged on July 17, 1982 in good condition without any continuance of chest pain. He had developed no arrhythmias or evidence of congestive heart failure during this hospitalization and had no evidence of a myocardial infarction. The discharge diagnosis was chest pain of unknown etiology, possibly angina pectoris, and chronic low back pain of unknown etiology. Nunn was instructed to take Isordil for his chest pain and to see Dr. Shelton in two weeks.
 
 
 10
 A January 5, 1983 report from Ypsilanti X-Ray Clinic noted that Nunn's heart, great vessels, diaphragm and bony thorax were unremarkable.
 
 
 11
 On July 18, 1983, Dr. Shelton submitted a report summarizing his findings and treatment of Nunn. At that time, testing of the lumbosacral area revealed back pain with forward motion of 90 degrees, backward motion of 10 degrees and sideways motions of 10 degrees. There was diminished reflex of the right patella, but no sensory abnormalities. Although Dr. Shelton placed a check mark in the form for motor nerve abnormalities, he did not indicate the severity of this finding or the extremity involved as required by the form. Straight leg raising was positive at 60 degrees on the left and 20 degrees on the right. Muscle spasms were noted as being almost constant. Dr. Shelton again noted that a laminectomy had been recommended but that he had been unable to talk Nunn into it because Nunn was so afraid of surgery. Dr. Shelton also reported that Nunn experienced infrequent chest pains brought on by exertion and excitement and alleviated by Tylenol # 4. The diagnosis was lumbosacral disc and chest pain.
 
 
 12
 On August 13, 1983, Dr. William Martin, an internist, examined Nunn for his back and chest pain. At this time Nunn reported that he was scheduled for disc surgery in the fall and that he had been told that he had angina pectoris. Nunn related a seven year history of chest pain, precipitated by emotion and described as aching, squeezing and radiating to the upper left extremity. Dr. Martin reported Nunn's blood pressure to be 146/110, 150/108 and 150/102 at 15 minute intervals. A fundi revealed A-V nicking. Sinus rhythm was normal with no murmur. There was no edema, clubbing or cyanosis. Straight leg raising was positive at 40 degrees on the left and negative at 90 degrees on the right. Deep tendon reflexes were diminished in the lower left extremity and normal in the lower right extremity. There was no atrophy of the joints. An electrocardiogram revealed some non-specific ST changes in leads V2 through V4. The chest x-ray was normal. A treadmill test was contraindicated because of Nunn's uncontrolled hypertension and suspected herniated lumbar disc. The overall clinical impression was a suspected herniated lumbar disc at L4-L5, poorly controlled hypertension and atypical chest pains possibly representing angina pectoris.
 
 
 13
 The record does not contain evidence of any further medical treatment until June 3, 1984. At that time, Nunn was admitted to St. Joseph Mercy Hospital emergency room after fracturing his right thumb. Apparently Nunn had hit his right fist into a door while quarreling with his wife. Nunn was treated with a splint and thumb spica, a sling and analgesics. He was then released and instructed to see Dr. O'Keefe, an orthopedic surgeon, the following day. On July 19, 1984, Dr. O'Keefe reported that Nunn was currently limited to activities that did not require him to use his right hand for any forceful lifting or grasping. Dr. O'Keefe further reported that Nunn was not disabled at the present time from doing all work and that Nunn was not going to be disabled longterm as a result of the hand injury. He opined that Nunn would be back to his pre-injury level within approximately two months.
 
 
 14
 Dr. Shelton submitted reports in June and July, 1984, in which he noted that Nunn's last attack of chest pain occurred before May 8, 1984. The pain was described as being sharp and heavy and occasionally radiating to the right or left shoulder. Dr. Shelton indicated that he was not sure whether Nunn had angina pectoris, but that in light of EKG changes and Nunn's symptoms, he had begun treatment for that condition as well as hypertension. Dr. Shelton further noted that although Nunn had hypertension, the condition had not caused any end organ damage. Ranges of motion for the lumbosacral spine were forward flexion of 60 degrees, right flexion of 20 degrees, left flexion of 10 degrees and backwards flexion of 10 degrees. There were no sensory or motor nerve root abnormalities; however, reflexes were diminished on the right. There was evidence of muscle spasm and Nunn walked with a slight limp but did not require any assistive device. Dr. Shelton diagnosed herniated disc, chest pain and hypertension.
 
 
 15
 On August 20, 1984, Nunn was seen by Dr. Sunil Bhatia for a consultative examination. Straight leg raising was limited to 30 degrees on the right and 45 degrees on the left. The spine showed marked muscle spasm in the right lumbosacral region. Nunn complained of lower back pain radiating to the right leg and substernal, right-sided chest pain. Nunn indicated that the chest pain had been present for a few years and that the pattern did not appear to change much. Blood pressure levels of 180/120, 170/120 and 168/120 were recorded at 15 minute intervals. Neurologic reflexes and motor strength were diminished on the right, but no sensory loss was evident. Nunn could flex forward to 45 degrees and hyperextend to 10 degrees. Lateral rotation was minimal. Dr. Bhatia opined that Nunn's back problem appeared to be the major limiting factor of his activities at the time. The diagnosis was severe uncontrolled hypertension and radiculopathy secondary to lumbosacral degenerative disc disease.
 
 
 16
 The ALJ issued his opinion on March 27, 1985. The ALJ found that Nunn had severe back pain; however, he went on to find that Nunn did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, subpt. P. He also found that Nunn's complaints of pain were not credible and that Nunn had the residual functional capacity to perform sedentary work. After considering Nunn's residual functional capacity, age, education and work experience, the ALJ applied the medical-vocational guidelines and concluded that Nunn was not disabled pursuant to 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 1, Rules 201.24 and 201.25. On August 7, 1985, the Appeals Council affirmed the ALJ's decision.
 
 
 17
 Nunn timely filed the instant action with the district court pursuant to 42 U.S.C. Sec.405(g). This appeal was referred to a magistrate. The magistrate filed her report and recommendation on May 28, 1986, recommending that the Secretary's determination be reversed. However, the district court declined to adopt the magistrate's report and on June 19, 1986, it affirmed the Secretary's decision to deny benefits. This appeal followed.
 
 II.
 
 18
 Pursuant to 42 U.S.C. Sec.405(g), the Secretary's findings are conclusive if supported by substantial evidence. For there to be substantial evidence there must be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). This court cannot base its decision entirely upon a single piece of evidence; the record must be evaluated as a whole. Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).
 
 
 19
 This deferential standard of review applies only to resolving issues of fact and credibility. Wiggins v. Schweiker, 679 F.2d 1387 (11th Cir. 1982); Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir. 1978). Even if the reviewing court would resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1059 (6th Cir. 1983).
 
 
 20
 Nunn argues that the Secretary erred in determining that Nunn's impairments, or a combination thereof, did not meet or equal a listing in 20 C.F.R. pt. 404, subpt. P, app. 1. Nunn contends that he meets the requirements of Section 1.05C in the listings for a spinal disorder. Nunn also contends that the combination of his spinal disorder and his hypertension does not support a finding that he is capable of participating in gainful activities on a regular basis.
 
 
 21
 Pursuant to Section 1.05C, all of the following conditions mist be present to meet the spinal disorder impairment that Nunn contends he has:
 
 
 22
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 23
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 24
 20 C.F.R. pt. 404, subpt. P, app. 1, Sec.l.05C. In the instant case, Nunn does not meet this listing. Specifically, Dr. Shelton's June and July 1984 reports state that Nunn had forward flexion of 60 degrees and no sensory abnormalities. Dr. Bhatia's August 1984 report also stated that there was no sensory loss and that Nunn could flex forward 45 degrees. Such findings do not meet the Section 1.05C requirements of significant limitation of motion in the spine and sensory loss. Additionally, the ALJ rejected the credibility of Nunn's complaints of pain after pointing out inconsistencies in Nunn's testimony at the hearing and the medical records pertaining to his pain and abilities to function physically. Therefore, we believe the Secretary was correct in determining that Nunn did not meet this listing.
 
 
 25
 In cases of hypertension the regulations clearly set forth criteria for determining the severity of the impairment.
 
 
 26
 C. Hypertensive vascular disease does not result in severe impairment unless it causes severe damage to one or more of four end organs: heart, brain, kidneys, or eyes (retinae). The presence of such damage must be established by appropriate abnormal physical signs and laboratory findings as specified in, 4.02 or 4.04, or for the body system involved.
 
 
 27
 20 C.F.R. pt. 404, subpt. P, app. 1, Sec.4.OOC. Nunn's medical reports disclose no end organ damage whatsoever. Furthermore, none of the medical doctors indicated that Nunn should be restricted in his activities because of his hypertension. Dr. Bhatia stated that Nunn's back problem appeared to be his major limiting factor and Dr. Shelton reported that although Nunn had hypertension, the condition had not caused any end organ damage. If Nunn's examining physicians did not advise him of a need to restrict his activities in light of the combination of his hypertension and back problems, we believe that it was not erroneous for the ALJ to determine that Nunn did not have a combination of impairments that would lead to a determination of disability for social security purposes.
 
 
 28
 Having concluded that substantial evidence supports the Secretary's determination that Nunn is not disabled, we accordingly AFFIRM the judgment of the district court.