869 F.2d 1488
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Samuel P. BAILEY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-4111.
 United States Court of Appeals, Sixth Circuit.
 March 14, 1989.
 
 Before DAVID A. NELSON and ALAN E. NORRIS, Circuit Judges, and BERNARD R. FRIEDMAN, District Judge.*
 PER CURIAM.
 
 
 1
 This is a social security case involving claims of totally disabling lower back and neck pain. the issues on appeal are whether there is substantial evidence to support the Appeals Council's finding that the claimant's disability did not meet or equal the listed impairments of 20 C.F.R. Part 404, Subpt. P, App. 1, and whether there is substantial evidence to support the Appeals Council's finding that the claimant retains the residual functional capacity to perform sedentary work. Because we believe that there is substantial evidence to support these findings, we shall affirm the denial of benefits.
 
 
 2
 Claimant Samuel Bailey has a high school education and has held various jobs at the medium or heavy exertional level. He was 45 years old at the time the Appeals Council denied his application for benefits.
 
 
 3
 The record reflects Mr. Bailey's medical history since 1977. In October of that year Mr. Bailey's orthopedist observed "decreased sensation throughout the left lower extremity as compared to the right side." Mr. Bailey underwent a laminectomy in 1978. There is some suggestion in October of 1979 that Mr. Bailey may have been suffering from arachnoiditis.
 
 
 4
 Mr. Bailey was hospitalized again in April of 1981, complaining of pain and muscle spasm in his neck and pain and numbness in his left shoulder and left arm. A laminotomy was performed, but Mr. Bailey's pain persisted despite the surgery.
 
 
 5
 Although the claimant's doctor, Dr. Yashon, wrote in August of 1981 that the patient "basically [was] doing quite a bit better as to his neck and low back," Mr. Bailey was hospitalized again in September of that year. Dr. Yashon recommended another laminectomy, which was performed in October 1981, along with three foraminotomies (a procedure to relieve nerve root compression). At that point, Dr. Yashon concluded that the pain might be due to "scar tissue, growth, possibility of a herniated disc, or arachnoiditis."
 
 
 6
 In February of 1982, Dr. Yashon reported that Mr. Bailey had started to suffer pain in his neck and shoulder as well as his lower back. In April of that year a reviewing doctor recommended restrictions on bending and limiting exertion to "light work." Dr. Robert Hershner examined Bailey in July of 1982 and reported that Mr. Bailey suffered from spasm, pain, and some restriction of motion in the lumbar and cervical regions of the spine. Dr. Hershner did not find any sensory problems. He advised Mr. Bailey to avoid "heavy" physical activity.
 
 
 7
 At the administrative hearing in September of 1982, the claimant testified that he suffered from pain in his "left shoulder, down the back of [his] neck ... low back, [his] buttocks, and down both legs ... [s]ometimes down to the knee; sometimes all the way down to [his] feet." He took several prescription drugs which reduced the pain, at least some of the time, to a "tolerable" level.
 
 
 8
 Mr. Bailey filed an application for disability benefits in March of 1982, basing his claim on pain in his lower back and neck. The application was denied initially and on reconsideration. At Mr. Bailey's request a hearing was held before an administrative law judge. Relying on the testimony of a medical examiner hired by the Secretary, Dr. Wiltberger, the ALJ found that Mr. Bailey met listing 1.05C of 20 C.F.R. Part 404, Subpt. P, App. 1, and was therefore totally disabled.
 
 
 9
 The Appeals Council reviewed the case on its own motion and reversed the ALJ's decision, finding that Bailey did not meet listing 1.05C and that he retained the residual functional capacity to do sedentary work. Mr. Bailey filed a complaint in the district court, and the district court set aside the denial of benefits. The Secretary appealed. We vacated the district court's decision and remanded the matter for reconsideration in light of Mullen v. Bowen, 800 F.2d 535 (6th Cir.1986) (en banc). On remand, the district court affirmed the Secretary's decision. This appeal followed.
 
 II
 
 10
 Despite the complicated procedural history of this case, our review follows the usual pattern. We examine the record to determine if there is substantial evidence to support the final decision of the Secretary, i.e., the decision of the Appeals Council.
 
 
 11
 Mr. Bailey argues that his impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1, specifically listed impairment 1.05C:
 
 
 12
 "Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 13
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 14
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss."
 
 
 15
 (Emphasis added.) General provision 1.00B, which applies to all listed spinal impairments, describes the type of objective evidence that is required:
 
 
 16
 "There must be a detailed description of the orthopedic and neurologic examination findings. The findings should include a description of gait, limitation of movement of the spine given quantitatively in degrees from the vertical position, motor and sensory abnormalities, muscle spasm, and deep tendon reflexes.
 
 
 17
 These physical examination findings must be determined on the basis of objective observations during the examination and not simply a report of the individual's allegation, e.g., he says his leg is week [sic], numb, etc. Alternative testing methods should be used to verify the objectivity of the abnormal findings, e.g., a seated straight-leg raising test. Since abnormal findings may be intermittent, their continuous presence over a period of time must be established by a record of ongoing treatment...."
 
 
 18
 (Emphasis added.)
 
 
 19
 The ALJ's opinion does not include any discussion of how the claimant's impairment satisfies the requirements of listed impairment 1.05C. Instead, the ALJ relied entirely on the testimony of Dr. Wiltberger--testimony that does not refer to any specific medical evidence in the record to support the opinion that Bailey's impairment meets the second requirement of listing 1.05C concerning motor, sensory, and reflex loss. Mr. Bailey points to no specific items of evidence in the record that meet the requirements of the listing, and we find no such evidence either. This court has previously enforced the language of the listing quite strictly, requiring objective evidence meeting all of the criteria of impairment 1.05C. See Nunn v. Bowen, 828 F.2d 1140, 1144 (6th Cir.1987) (per curiam).
 
 
 20
 Having found that Mr. Bailey did not meet or equal any of the listed impairments, the Appeals Council proceeded to make the following finding concerning Mr. Bailey's residual functional capacity:
 
 
 21
 "[T]he claimant's back and neck surgeries, though severe, would not prevent the claimant from performing at least sedentary work which involves lifting 10 pounds at a time and occasionally carrying articles like docket files, ledgers, and small tools, as well as the capacity to sit for substantial periods of time with occasional standing and walking."
 
 
 22
 The claimant's testimony indicated that he could sit about an hour, "couldn't stand in one place for 15 minutes without excruciating pain," could walk for 45 minutes to an hour, could bend at the waist "some," could squat, could kneel with some pain, had great difficulty lifting more than about 20 pounds when he buys groceries, and had trouble climbing stairs. He passed his time doing things such as reading, watching television, and doing crossword puzzles. He was apparently able to dress himself, take care of basic needs, and drive short distances three or four times a week. At the time of the hearing before the ALJ, Bailey was enrolled in a six-week training course in building maintenance, running from 8 a.m. to 2:30 p.m. every day. Mr. Bailey's ability to take part in such a training course tends to support the conclusion that his continuing back and neck pain were not so severe as to disable him totally from sedentary work.
 
 
 23
 We believe that there is substantial evidence to support the Secretary's denial of benefits. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Bernard R. Friedman, United States District Judge for the Eastern District of Michigan, sitting by designation