904 F.2d 708
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bruce A. RIDDLE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-3931.
 United States Court of Appeals, Sixth Circuit.
 June 15, 1990.
 
 Before MILBURN and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Bruce Riddle appeals the district court's judgment affirming the Secretary of Health and Human Services' denial of his claim for social security disability benefits. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Riddle filed his application for benefits on September 23, 1983, alleging disability due to lower back pain. An ALJ denied Riddle's application for benefits, and Riddle filed an action in the district court seeking judicial review of the decision. The district court remanded the case for a supplemental hearing to obtain vocational expert testimony and to consider additional evidence submitted by Riddle.
 
 
 3
 After the supplemental hearing, the ALJ again denied benefits, and Riddle appealed to the Appeals Council, and it remanded the case to the ALJ for a second supplemental hearing. The ALJ again denied benefits, and the Appeals Council affirmed the ALJ's decision. Riddle filed the present action in the district court seeking review of the Secretary's decision. The district court adopted the magistrate's report and recommendation, and held that substantial evidence supported the Secretary's decision that Riddle retained the ability to perform a significant number of jobs in the national economy. Riddle timely filed the present appeal.
 
 B.
 
 4
 Riddle was thirty-five years of age on the date he filed his application for disability benefits. He is a high school graduate who also attended one and one-half years of college. Riddle's past relevant work has been as a truck driver. Riddle suffered a back injury in a truck accident on December 8, 1981, and he last worked on September 30, 1982.
 
 
 5
 Riddle alleges disability due to a combination of physical and psychological impairments. Dr. Donald Siehl, an orthopedic surgeon, and Dr. R.G. Deering, a chiropractor, are Riddle's treating physicians. Drs. Siehl and Deering have treated Riddle on a regular basis since he injured his back in the December 1981 truck accident. Drs. Siehl and Deering opine that Riddle is totally disabled from gainful employment. Dr. Siehl has diagnosed lumbar and sacral somatic dysfunction and myofibrositis with radiculitis, and psychophysiologic musculoskeletal reactions. Dr. Deering has diagnosed lumbar and lumbo sacral sprain or strain syndrome, with psychogenic overlay.
 
 
 6
 The record in this case also contains the results of examinations conducted by other physicians, psychologists, and psychiatrists. Four physicians who have examined Riddle have concluded that he is not totally disabled by his back condition. One psychological evaluation reports mild work-related impairments, but does not suggest that Riddle is totally disabled. However, two psychiatric evaluations conclude that Riddle is incapable of gainful employment due to the combination of his physical and psychiatric impairments. And one psychological evaluation conducted after the ALJ rendered his decision concludes that Riddle has been totally disabled since 1982 and that a combination of psychological impairments essentially interfere with his ability to withstand the stress and pressure of ordinary work activity.
 
 
 7
 The principal issues on appeal are (1) whether substantial evidence supports the Secretary's decision, (2) whether the ALJ failed to give due weight to the opinions of treating physicians, (3) whether the ALJ failed to consider the combined effect of physical and psychological impairments, (4) whether the ALJ erred by finding that Riddle was not disabled due to pain, and (5) whether Riddle was denied due process by the ALJ's refusal to submit interrogatories to various physicians.
 
 II.
 A.
 
 8
 The inquiry on review is whether the Secretary's findings are supported by substantial evidence and whether he correctly applied the law. Mullis v. Bowen, 861 F.2d 991, 992-93 (6th Cir.1988). We do not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. The fact that the record may also contain substantial evidence to support a conclusion different from that reached by the Secretary is irrelevant. Crisp v. Secretary of Health & Human Serv., 790 F.2d 450, 453 n. 4 (6th Cir.1986) (per curiam).
 
 B.
 
 9
 The medical evidence reveals few abnormal objective findings. In medical exams testing Riddle's forward flexion, only two of six examinations revealed significant limitation of motion in the spine. See Nunn v. Bowen, 828 F.2d 1140, 1144 (6th Cir.1987) (forward flexion of forty-five to sixty degrees does not meet 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 1.05C requirements for significant limitation of spine motion). An x-ray of the lumbar spine taken in August 1983 showed no destructive or degenerative spine changes, and an EMG performed about the same time was essentially normal and showed no evidence of radiculopathy or denervation. A lumbar CT scan in June 1984 revealed slight posterior broad based disc bulging, but no localized nucleus herniation at the L4-5 level.
 
 
 10
 The opinions of non-treating physicians who examined Riddle also provide evidence supporting the Secretary's decision. Dr. Sunder Goel examined Riddle on July 22, 1983, and he opined that although Riddle was thirty percent disabled, he should be able to engage in professions other than truck driving. Dr. Martin Fritzhand opined only that Riddle was unable to resume employment requiring a prolonged sitting position such as being a truck driver. Dr. Christos Ioannidis, a neurologist, examined Riddle on August 28, 1985. The neurological examination was "completely unremarkable," and Dr. Ioannidis was "unable to find any objective deficit." Dr. Ioannidis concluded that Riddle would be "an excellent candidate for workers' rehabilitation." Dr. Jeffrey Blood examined Riddle on July 31, 1986, and he opined that Riddle should be able to stand and walk at least four hours a day and should be able to sit four hours a day. The only restrictions Dr. Blood noted were that Riddle should not work in a position requiring a twisting type activity of his back, nor one involving stairclimbing.
 
 C.
 
 11
 A treating physician's opinion is accorded substantial deference only if it is based on sufficient medical data. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). The ALJ properly discounted the opinions of Drs. Siehl and Deering because their opinions were not supported by their medical findings. For example, on June 5, 1984, Dr. Siehl opined that Riddle had developed a herniated intervertebral disc syndrome at the L5 level. However, a lumbar CT scan on June 7, 1984, revealed "no localized nucleus herniation." No other objective medical data is offered to support Dr. Siehl's diagnosis.
 
 
 12
 The ALJ also discounted Dr. Siehl's opinions because of inconsistencies between narrative reports and opinion forms issued by Dr. Siehl. In a narrative report dated March 14, 1986, Dr. Siehl stated that Riddle was "on restrictions as to excess lifting, bending, twisting, pushing and pulling." Dr. Siehl did not indicate in this report that Riddle was restricted in any way regarding sitting, standing or walking. However, in an evaluation form completed on February 13, 1986, Dr. Siehl indicated that Riddle had the residual functional ability to sit, stand and walk only two and one-half to four hours per day. This inconsistency was repeated in a narrative report and an opinion form completed on November 21, 1986.
 
 
 13
 The ALJ also properly discounted opinions rendered by Dr. Deering, Riddle's chiropractor. "A chiropractor is not an acceptable medical source, 20 C.F.R. Sec. 404.1513, although the claimant may offer such evidence to help the Secretary to understand how the claimant's impairment affects the ability to work. Even were [Dr. Deering] an acceptable medical source, his opinion could be afforded little weight because he failed to submit any data, such as x-rays, to substantiate his conclusions." McInally v. Bowen, No. 87-1472 (6th Cir. May 31, 1988) (unpublished opinion).
 
 D.
 
 14
 Riddle argues that the ALJ failed to consider the combined effect of his physical and psychological impairments. The ALJ found that Riddle suffers from a combination of severe psychological impairments, including dysthymic disorder, somatoform disorder, and substance addiction in remission. The ALJ concluded that Riddle's mental impairments caused him to have a lowered tolerance for stress and concentration difficulties which would limit him to performing simple repetitive tasks involving minimal stress, but the impairments were not sufficiently severe to make him disabled.
 
 
 15
 The ALJ completed a psychiatric review technique form in conjunction with his decision denying benefits. The ALJ evaluated Riddle's mental impairments under three categories: affective disorders, somatoform disorders, and substance addiction disorders. The ALJ indicated on the psychiatric review form that there was an absence of evidence regarding the affective disorder and the somatoform disorder, and that the substance abuse disorder was in remission. The ALJ also concluded that there was an insufficient degree of limitation to satisfy the applicable listings.
 
 
 16
 Riddle does not contend that his psychological impairments alone are disabling. Rather, he asserts that he is disabled by the combination of his physical and psychological impairments, and he argues that the ALJ failed to consider the combined effect of his impairments. However, the ALJ's decision indicates that he did consider the combined effect of the impairments, and his conclusion that Riddle is not disabled is supported by substantial evidence.
 
 
 17
 The ALJ evaluated Riddle's residual functional capacity and concluded that Riddle's inability to sit for a prolonged period of time, and his inability to perform more than simple repetitive tasks or to tolerate more than minimum stress prevent him from performing a full range of sedentary work. The restrictions identified by the ALJ reflect his consideration of the combined effect of Riddle's physical and psychological impairments. Riddle's inability to sit for a prolonged period of time results from his back condition, while his restrictions to simple repetitive tasks and minimum stress result from his psychological impairments.
 
 
 18
 Although Riddle's combined limitations prevent him from performing the full range of sedentary work, a vocational expert testified in response to a hypothetical question reflecting Riddle's condition that there are a significant number of jobs in the national economy which Riddle could perform, including surveillance systems monitor, typecopy examiner, wire worker, getter, patcher, and telephone quotation clerk. Therefore, the ALJ concluded that Riddle was not disabled.
 
 
 19
 The evidence considered by the ALJ included two psychiatric evaluations, a psychological evaluation, and the testimony of a medical advisor. The psychological evaluation performed by Dr. Alan Boerger revealed no significant limitations. Dr. Boerger concluded that Riddle's ability to understand and follow instructions was unimpaired, his ability to maintain attention to perform simple repetitive tasks was mildly impaired, and his ability to relate to fellow workers and to withstand stress and pressure associated with work activity was moderately impaired. These conclusions are consistent with the restrictions noted by the ALJ and they do not suggest that Riddle is totally disabled.
 
 
 20
 The medical advisor's testimony also supports the ALJ's decision. Dr. Arnold Allen, a board-certified psychiatrist, reviewed Riddle's record and testified at the second supplemental hearing. Dr. Allen opined that Riddle retained the ability to perform routine repetitive tasks, varied tasks, and even complex tasks. Dr. Allen opined that Riddle's depression was situational and caused primarily by his lack of work, and Dr. Allen suggested that a return to work could be therapeutic.
 
 
 21
 The two psychiatric evaluations in the record report that Riddle is incapable of engaging in substantial gainful employment. It should be noted that both evaluations conclude that Riddle is unable to work due to the combination of his physical and psychiatric impairments. Although the two psychiatrists conclude that Riddle is incapable of gainful employment, several findings in their evaluations are consistent with the ALJ's conclusion that Riddle can perform sedentary work involving simple repetitive tasks and minimal stress.
 
 
 22
 Dr. G.M. Sastry reported on June 3, 1986, that Riddle was of at least average intelligence and that he was able to perform simple calculations without any difficulty. On a form accompanying the evaluation, Dr. Sastry indicated that Riddle's ability to relate to other people, to comprehend and follow instructions, and to sustain attention were only moderately impaired and did not effect his ability to function. However, on the same form, Dr. Sastry indicated that Riddle's ability to perform routine repetitive tasks or to work in contact with others was severely impaired. These conclusions seem inconsistent, and this inconsistency brings into question the accuracy of Dr. Sastry's evaluation.
 
 
 23
 Dr. Arthur Greenfield's psychiatric evaluation also includes findings supportive of the ALJ's decision. For example, Dr. Greenfield reports that Riddle's ability to relate to other people and his ability to comprehend and follow instructions are only moderately impaired. A moderate impairment is defined in the form accompanying Dr. Greenfield's evaluation as an impairment of slight importance which does not affect the ability to function. This finding is consistent with the ALJ's conclusion that Riddle can perform simple repetitive tasks.
 
 
 24
 The record includes another psychological evaluation performed in September 1987 by Dr. Michael Belcher. This evaluation was conducted after the ALJ's decision, but it was considered by the Appeals Council when it reviewed the ALJ's decision. Dr. Belcher opined that Riddle has been totally disabled since approximately 1982 by a combination of psychological impairments which essentially interfere with his ability to withstand the stress and pressure of ordinary work activity. However, Dr. Belcher's report may be discounted for at least two reasons. First, Dr. Belcher's conclusion that Riddle is disabled by psychological impairments only is inconsistent with other opinions in the record which state that Riddle is disabled by the combined effect of physical and psychological impairments. Indeed, Riddle does not argue that he is disabled by psychological impairments alone. Second, the ALJ's finding that Riddle is restricted to work involving minimal stress comports with Dr. Belcher's conclusion that Riddle's impairments interfere with his ability to withstand the stress and pressure of ordinary work activity.
 
 
 25
 Although the record includes evidence which is contrary to the ALJ's decision, this does not deprive the ALJ's decision of substantial evidence. The fact that the record may also contain substantial evidence to support a conclusion different from that reached by the Secretary is irrelevant. Crisp, 790 F.2d at 453 n. 4. The Secretary fulfilled his function by resolving conflicts in the evidence and deciding questions of credibility, and we do not try the case de novo. Garner, 745 F.2d at 387. Because there is relevant evidence in the record which a reasonable mind could find adequate to support the Secretary's conclusion, we hold that the Secretary's decision denying benefits is supported by substantial evidence.
 
 E.
 
 26
 Riddle next argues that the Secretary failed to consider whether he was disabled due to pain. Riddle satisfies the first prong of the pain test of Duncan v. Secretary of Health & Human Serv., 801 F.2d 847, 853 (6th Cir.1986), because there is objective medical evidence of an underlying lower back condition. However, the objective evidence neither confirms the severity of the alleged pain nor reveals a medical condition which could reasonably be expected to produce disabling pain. Id. While several physicians note Riddle's complaints of pain, none diagnosed the pain as disabling. In fact, objective evidence indicates that Riddle's pain was not disabling. Dr. Siehl, Riddle's treating physician, reported in March 1986 and November 1986 that Riddle took only "a minimum of pain medication." In July 1986, Riddle told Dr. Blood that he took pain medication every other day. At the second supplemental hearing, Riddle testified that he continued to take the same pain medication every other day. This evidence does not confirm the severity of the alleged disabling pain.
 
 F.
 
 27
 Riddle argues that he was denied due process because the ALJ refused to submit interrogatories to certain physicians. However, Riddle waived appellate review of the due process issue by not raising the issue in his objections to the magistrate's report and recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir.1987). Alternatively, excusing Riddle's waiver of appellate review, we hold that Riddle was not denied due process because his attorney did cross-examine one of the physicians at the second supplemental hearing, and he had the opportunity to confront and cross-examine the other physicians through use of subpoenas compelling their appearance and testimony at the second supplemental hearing. See Richardson v. Perales, 402 U.S. 389, 404 S.Ct. 1420, 1429 (1971); 20 C.F.R. Sec. 404.950(d).
 
 III.
 
 28
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.