980 F.2d 729
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Betty J. APLET, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-1060.
 United States Court of Appeals, Sixth Circuit.
 Nov. 24, 1992.
 
 Before NATHANIEL R. JONES and SILER, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Betty Aplet appeals the district court's grant of summary judgment which affirmed the Health and Human Services Secretary's denial of her social security disability benefits application. For the following reasons, we affirm the district court's grant of summary judgment.
 
 I.
 
 2
 Aplet filed an application for a period of disability, disability insurance benefits, and Supplemental Security Income on July 21, 1988, and requested a hearing on February 6, 1989. An Administrative Law Judge ("ALJ") conducted a hearing on December 13, 1989.
 
 
 3
 The evidence presented to the ALJ included the following:
 
 
 4
 Aplet, born May 24, 1956, completed high school and can read and write. Aplet is divorced and has three children, all of whom had been removed to the custody of the state of Oregon.
 
 
 5
 Aplet's work experience is fragmented. She last worked on a regular basis as a seasonal cannery worker in 1977. Aplet testified that she had thoughts of suicide and heard imaginary voices while working at the cannery. She also noted, in a letter to the Social Security Administration, that she was unable to communicate with her fellow workers at the cannery. She stated that she quit her job at the cannery to get married and raise her family. Aplet's children were placed in foster care in either 1982 or 1983.
 
 
 6
 Aplet returned to work in either 1983 or 1984. Aplet did several jobs including: waiting on tables in a Chinese restaurant; cleaning houses; packing waffles; and packing corn dogs. She did not hold any of these jobs for any significant period of time. She lost her job in a Chinese restaurant after one week. Aplet worked as a housekeeper for two weeks. In 1987, she worked as a "waffle packer" only long enough to make a total of $600.00. Aplet was fired for missing too much time being sick. She stated that she was sick because "I kept thinking someone was spitting on my sandwiches in the lunchroom." Tr. at 45. She worked in another cannery job for a month. She worked two weeks packing corn dogs, but was told one day that she was not needed anymore. Others were hired at that time.
 
 
 7
 Aplet testified that she has had emotional and psychological problems dating back to the late 1970s. On December 9, 1977, Aplet was admitted to the Oregon State Hospital for psychiatric treatment. The clinical history form states:
 
 
 8
 "Delusions of persecution--'people can read my mind & they are bombarding me.' 'I need help. I need meds.' Has partial insight. Auditorily hallucinated.... Ac. Shizo episode."
 
 
 9
 Tr. at 155. The admission papers further state that Aplet is not capable of handling her own funds, talks excessively, and had feelings of persecution, delusions of persecution and reference, poor insight, and poor judgment.
 
 
 10
 Aplet was again hospitalized at the Oregon State Hospital, at the request of her parents, on November 11, 1980. The intake notes reflect: "Some paranoid ideation.... Judgment and insight markedly impaired." Tr. at 157. Those notes also reflect some evidence of alcohol abuse. The admissions records reflect that Aplet was indecisive, had an inappropriate affect, was suspicious, and had feelings of unreality and persecution. She blamed others for her difficulties. She had poor insight and judgment and was unmotivated for treatment.
 
 
 11
 On June 10, 1981, Aplet underwent a psychological evaluation by Dr. David N. Sweet, Ph.D., a psychologist. At that time, Dr. Sweet concluded that Aplet's psychopathology was episodic in view of the fact that she was currently handling her life quite well. Dr. Sweet further concluded that Aplet would probably continue to be impulsive and unpredictable, and predicted that her marital adjustment would be poor.
 
 
 12
 In a report dated April 12, 1983, Dr. Paula Rohrbaugh, Ph.D., a psychologist, reported that between July 15, 1981 and October 14, 1981, Aplet was seen by her on eleven occasions. The psychologist diagnosed Aplet with a severe adjustment disorder with mixed disturbance of emotions and conduct, and a borderline personality disorder.
 
 
 13
 Aplet sought treatment irregularly through the Linn County Department of Health Services from 1980 through 1986. In addition, she was seen at the Benton County Mental Health clinic several times between 1984 and 1985.
 
 
 14
 On October 6, 1988, Aplet was evaluated by Dr. David Eason, M.D. Dr. Eason concluded that Aplet's personality difficulties were "rather lifelong in nature and a response to both known and presumed developmental deprivation" such as separation from her natural parents, multiple conflicts with her foster parents, and unstable social and occupational functioning during her adulthood. Tr. at 193. Dr. Eason also found that Aplet's use of alcohol and drugs had deteriorated her nervous system's ability to regulate stress and make appropriate decisions regarding interpersonal occupational matters.
 
 
 15
 On January 16, 1989, Dr. D. Anderson, Ph.D., a state agency psychologist, reviewed the evidence of record and stated that "although [Aplet's] condition was probably very similar at [her date last insured on] June 30, 1979, we simply have insufficient evidence to evaluate." Tr. at 104.
 
 
 16
 Between January and April 1989, Aplet was seen on five occasions at Benton County Mental Health clinic. She complained primarily of relationship problems with various boyfriends, her extensive drinking problem, and problems she was having working as a cleaning woman.
 
 
 17
 In a psychiatric evaluation form dated July 21, 1989, Dr. N.P. Cabrera, M.D., with the Michigan Department of Social Services, diagnosed Aplet as having paranoid schizophrenia and opined that the duration of incapacity of disability for purposes of employment was for life.
 
 
 18
 In a decision rendered April 10, 1990, the ALJ found that Aplet met the disability insured status requirements on March 28, 1975, and continued to meet them through June 30, 1979, but not thereafter. The ALJ then concluded that Aplet was not under a disability as defined in the Social Security Act at any time prior to June 30, 1979 because she did not prove that she had a severe impairment. Therefore, the ALJ denied disability benefits to Aplet for the time period prior to June 30, 1979. The ALJ did find that she was disabled at the time of her application on July 20, 1988.
 
 
 19
 Aplet requested review of the ALJ decision to the Appeals Council on June 11, 1990. Aplet presented additional materials to the Appeals Council, including the following:
 
 
 20
 On August 11, 1988, Aplet was reevaluated by Dr. Sweet. The psychologist noted that he had previously evaluated Aplet on one occasion in 1981. Sweet diagnosed a borderline personality disorder with borderline to low level intelligence. He further concluded that Aplet was unable to work in 1988.
 
 
 21
 In a letter to Aplet's attorney dated May 31, 1990, Dr. Sweet reported that he evaluated Aplet on two occasions, once in 1981 and again in 1988. Dr. Sweet opined that Aplet "would not have been able to engage in full-time competitive employment at the time I first saw her" and that it is also "unlikely that she could have engaged in such employment for several years earlier." Tr. at 232.
 
 
 22
 On February 27, 1991, the Appeals Council, after considering additional materials submitted by Aplet and finding much of those materials to be duplicative of evidence already of record, denied review of the ALJ's decision. As a result, the ALJ's decision became the final decision of the Secretary. Aplet appealed the Secretary's decision to the United States District Court for the Western District of Michigan. That court found that substantial evidence supported the ALJ's decision. As a result, it granted summary judgment in favor of the Secretary. Aplet has appealed the grant of summary judgment.
 
 II.
 
 23
 "[T]he Secretary's findings 'are not to be overturned unless there is no substantial evidence supporting such conclusions.' " Foster v. Bowen, 853 F.2d 483, 486 (6th Cir.1988) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983)). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." Id. "It is more that a mere scintilla, but only that much evidence required to prevent a directed verdict." Id. "This court 'may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.' " Id. (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984)). "Rather, '[i]f the Secretary's findings are supported by substantial evidence then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result.' " Id. (quoting Elkins v. Secretary of Health and Human Services, 658 F.2d 437, 439 (6th Cir.1981)).
 
 
 24
 This deferential standard of review applies only to the Secretary's findings of fact. Nunn v. Bowen, 828 F.2d 1140, 1144 (6th Cir.1987) (citing Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir.1982)). " '[N]o similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims.' " Wiggins, 679 F.2d at 1389 (quoting Smith v. Schweiker, 646 F.2d 1075, 1076 (5th Cir.1981)). "Failure to apply the correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal." Id.
 
 III.
 
 25
 Aplet first argues that the Secretary, through the ALJ and the Appeals Council, legally erred by refusing to consider medical evidence pertaining to the onset date of her disability. Specifically, Aplet argues that the ALJ and the Appeals Council failed to consider the medical opinions made subsequent to June 30, 1979, which, she contends, show that she had a severe impairment prior to that date.
 
 
 26
 Evidence and diagnoses compiled years later are admissible and relevant to a determination of disability before the expiration of the individual's insured status if that evidence relates back to the relevant period. Basinger v. Heckler, 725 F.2d 1166, 1169-70 (8th Cir.1984). See also Higgs v. Bowen, 880 F.2d 860, 862-63 (6th Cir.1988). Therefore, to the extent that the materials submitted to the ALJ and the Appeals Council relate back to the period prior to June 30, 1979, they are relevant and must be considered.
 
 A.
 
 27
 Turning to the ALJ, Aplet argues that he did not consider the following evidence:
 
 
 28
 1. In 1988, Dr. Eason submitted a medical report in which he states that Aplet has "a set of personality difficulties that are rather lifelong in nature" and that she has a "record of unstable social and occupational functioning throughout adulthood." Tr. at 194.
 
 
 29
 2. The Benton County Mental Health Clinic records for 1989 which indicate that Aplet told workers at the clinic that she hallucinated once in 1977, and that she had an extensive alcohol and drug abuse history.
 
 
 30
 3. In 1988, Ms. Mullally of the Linn County Department of Health Services noted that they have had contact with Aplet since 1980, that she has had treatment off and on until 1986, and that Aplet was described as suicidal, confused, experiencing anxiety attacks, and having difficulty with daily living.
 
 
 31
 4. In 1983, Dr. Rohrbaugh, a treating psychologist noted that Aplet had a "long background of impulsive, reactive behaviors." Tr. at 169.
 
 
 32
 5. Aplet, whom the ALJ found to be credible in her testimony, indicated that she heard voices in 1977, was unable to communicate at the cannery, and had thoughts of suicide even when she was working at the cannery.
 
 
 33
 Contrary to Aplet's argument, the ALJ considered all the materials. He specifically noted that the "[o]ver the years, evidence shows that [Aplet] was seen irregularly at various mental health clinics as well as a treatment center from June 17, 1986 through June 15, 1987. Based on this evidence, there is no objective and clinical data upon which to find a disability for entitlement to disability insurance benefits on or prior to June 30, 1979." Tr. at 13. Therefore, this argument is without merit. As for Aplet's testimony, Aplet is misguided by the ALJ's comments about her testimony. In regards to her testimony relating to the disability insurance benefits, the ALJ did not credit or discredit it. Rather, his statement about finding Aplet's testimony credible refers to Aplet's application for Supplemental Security Income. Therefore, this claim is without merit.
 
 B.
 
 34
 Turning to the evidence submitted to the Appeals Council, but not submitted to the ALJ, Aplet argues that the following evidence was not considered:
 
 
 35
 1. In 1988, Dr. Sweet, an examining physician, wrote a report which stated that he diagnosed Aplet to have a borderline personality disorder, borderline to low range of intelligence, and noted a history of polysubstance abuse.
 
 
 36
 2. On May 31, 1990, Dr. Sweet drafted a letter which indicated that he had first evaluated Aplet in 1981 and thought that she would not have been able to engage in full-time competitive employment at the time he first saw her and that it is also unlikely that she could have engaged in such employment for several years earlier.
 
 
 37
 3. In July 1989, Dr. Cabrera submitted a medical report that indicated that the duration of Aplet's disability was for life.
 
 
 38
 The Appeals Council does not have to review the case if it finds that the ALJ's action, findings, or conclusions are not contrary to the weight of the evidence currently of record including the additional evidence. 20 C.F.R. § 404.970(b) (1992). Although the Appeals Council does not have to consider the additional materials submitted, this council did review the materials. The Appeals Council stated specifically that it considered the materials submitted to them and concluded in a letter to Aplet that "[i]nasmusch as the additional evidence presented does not relate to your condition on or before June 30, 1979, when your insured status for benefits expired, the Appeals Council concluded that it provides no basis for disturbing the Administrative Law Judge's decision." Tr. at 5. Therefore, this argument is without merit.
 
 IV.
 
 39
 Aplet next argues that there is not substantial evidence to support the ALJ's holding that, pursuant to her claims for a period of disability and disability insurance benefits, Aplet was not disabled during the relevant time period.
 
 
 40
 The regulations provide steps for evaluating disability. 20 CFR 404.1520(a) (1992). A set order is followed to determine whether an individual is disabled. Id. If it is determined that a claimant is or is not disabled at any point in the review, further review is not necessary. Id. The sequence that the ALJ must consider is:
 
 
 41
 1. an individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b) (1992));
 
 
 42
 2. an individual who does not have a "severe impairment" will not be found to be "disabled" (404.1520(c) (1992));
 
 
 43
 3. if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1992), a finding of "disabled" will be made without consideration of vocational factors (404.1520(d) (1992));
 
 
 44
 4. if an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (404.1520(e) (1992));
 
 
 45
 5. if an individual's impairment is so severe as to preclude him or her from working at jobs done in the past, the performance of other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (404.1520(f) (1992)).
 
 
 46
 In addition, the regulations require that the ALJ follow a special procedure when evaluating the severity of mental impairments. 20 C.F.R. 404.1520a (1992). This special procedure requires the ALJ to use a form to list the signs, symptoms and other medical findings which establish the existence of a mental impairment. These listings correspond to the paragraph A criteria for the categories of mental disorders in Pt. 404, Subpt. P, App. 1, and are known as the "A" criteria.
 
 
 47
 The special procedure also requires that the ALJ rate the degree of functional loss resulting from the documented mental impairment(s).
 
 
 48
 404.1520a(b)(3). There are four areas of function which have been found especially relevant to the ability to work and which correspond to the paragraph B criteria of the mental disorders listed in Pt. 404, Subpt. P, App. 1, and are known as the "B" criteria. Id. The four areas are: activities of daily living; social functioning; concentration, persistence and pace; and deterioration or decompensation in work or work-like settings. Id.
 
 
 49
 Pursuant to 20 C.F.R. 404.1521(a) (1992), an impairment or combination of impairments is not severe if it does not significantly limit one's physical or mental ability to do basic work activities.
 
 
 50
 The ALJ found that "[p]rior to June 30, 1979, based upon the lack of objective medical evidence in this record, the claimant did not have an impairment or impairments which significantly limited her ability to perform basic work related functions, and therefore did not have a severe impairment (20 CFR 404.1521)." Tr. at 16. Therefore, the ALJ found that Aplet did not have a "severe impairment" pursuant to 404.1520(c), step two of the process. Based on that finding, the ALJ did not review the rest of the steps.
 
 
 51
 Upon review of the evidence, substantial evidence supports the ALJ's decision that there is insufficient data to conclude that Aplet had a severe impairment prior to 1979. Her medical history shows that she had only one evaluative psychiatric visit during her insured period, and then no psychiatric care until a couple of years later. While more recent mental health records indicate that Aplet's mental condition deteriorated after the expiration of her insurance status, those records do not relate back to her insured period.
 
 
 52
 In addition, Aplet's testimony regarding her daily activities during the relevant time period support the ALJ's finding that Aplet was not disabled. Aplet testified that she got married to her husband during that time period; that she worked seasonally at the cannery from 1972 to 1977; and that because she got married and became pregnant, she stopped working at the cannery. Aplet further testified that because she had three children "real close together" she did not return to any type of work until 1984. Tr. at 41. Finally, Aplet's testimony that she was employed through 1977 is inconsistent with and fails to support her claim that the onset date of her disability was March 28, 1975. See Gist v. Secretary of Health and Human Services, 736 F.2d 352, 358 (6th Cir.1984) (capacity to perform daily activities on a regular basis will militate against a finding of disability).
 
 
 53
 Based on the foregoing, there is substantial evidence to support the ALJ's determination that Aplet was not disabled.[1]
 
 V.
 
 54
 For the reasons stated, the district court's grant of summary judgment in favor of the Secretary is affirmed.
 
 
 
 [1]
 As a subargument, Aplet contends that because she proved, and the ALJ found that she could not perform her past relevant work, the burden shifted to the Secretary to establish that Aplet retained the residual functional capacity to perform substantial, gainful activity that exists in significant numbers in the national economy
 As to her subargument, Aplet confuses the issue. The ALJ found, and she proved, that she could not perform her past relevant work as of 1988. Aplet did not prove, and the ALJ did not find, however, that she could not perform her past relevant work on or prior to June 30, 1979. Therefore, her argument about burden shifting is without merit.